## THE CITY OF MOUND CITY v. JAMES D. SNODDY.

ATTORNEY — *Unauthorized — Employment by Mayor — Ratification.* A mayor of a city, by virtue of his office alone, cannot employ an attorney, and create a liability against the city for the services of such attorney; but if such employment is made, and an action is begun in the name of the city, and the city council has knowledge of the institution and pendency of the suit, and allows the attorney to proceed with the litigation for a considerable time, without protest or repudiation, and afterward acquiesces in and accepts the fruits of the service, it will operate as a ratification of the employment, and render the city liable for the value of the services.

*Error from Linn District Court.*

THE opinion states the case.

*R. F. Wilbur,* for plaintiff in error:

1. There is no evidence showing that James D. Snoddy, defendant in error, was ever employed by any competent authority to bring said action of replevin for and on behalf of the city. The mayor alone cannot enter into a contract or employment that will bind the city. Gen. Stat. of 1889, ¶¶ 935, 936.

2. The motion for a new trial should have been sustained, as the verdict was contrary to law and not sustained by sufficient evidence. There were not facts sufficient from which a contract could be implied. From the nature of the services rendered, it must reasonably be presumed that they were performed with the assent and by request of the defendant.

3. It may be argued that, as the defendant in error looked up the evidence and filed said case with knowledge on the part of the mayor and city clerk, that fact must be taken to be and is knowledge on the part of the city, and the city is bound to pay for said services. In order to bind the city, it must appear in evidence that the city not only knew of said acts of pretended employment, but it must have had an opportunity to disaffirm them. The defendant in error did nothing more in the case under the pretended employment as attorney for

the city — not a single professional act in furtherance of said pretended employment.  Hence it was error to overrule defendant's demurrer to plaintiff's evidence.

4.  The theory of the law is that a contract is implied, for the purpose of doing justice between the parties; that one has derived some benefit from the services of the other, and should pay for it.  2 Kent, Comm. (12th ed.), p. *450; Bish. Con. (1st ed.), § 5.

The damages allowed were excessive.  If an attorney's services are of no benefit to his client, or worthless, or a damage to him, by reason of his want of care and skill, he, the attorney, can recover nothing from his client for his services rendered.  1 Pars. Cont. (6th ed.), p. *116; *Huntley v. Bulner*, 6 Bing. (N. C.) 111; *Bracey v. Carter*, 12 A. & E. 373; *Hill v. Featherstonbaugh*, 7 Bing. 569; *Hopping v. Quinn*, 12 Wend. 517; *Runyan v. Nichols*, 11 Johns. 547; *Smith v. Bowditch*, 7 Pick. 138. ·

5.  If J. H. Trego was the agent of the city, and it appears from the evidence that he was, then he could not become plaintiff in an action of replevin to obtain possession of said bonds, for he had no interest in them.

The services for which fees are claimed were entirely useless to this plaintiff in error, and the evidence in the case shows it.  See Weeks, Att. at Law, p. 690.  In the following cases there was no direct evidence that defendant specially employed plaintiff to represent him, and, as the law would not imply a contract, he is not liable: *Miles v. DeWolf*, 34 N. E. Rep. (Ind. App.) 114.  See, also, *Fraser v. Haggarty*, 49 N. W. Rep. (Mich.) 116; *Justice v. Logansport*, 32 N. E. Rep. (Ind.) 868.

*James D. Snoddy*, defendant in error, for himself:

The suit was prosecuted to successful issue, and the bonds recovered and accepted by the city.  It is too late, after having garnered the fruit of defendant's work, for a city council to refuse to pay for the labor.  *City of Logansport v. Dykeman*, 17 N. E. Rep. 587; *Ehrsam v. Mahan*, 52 Kas. 245.

The counsel states that "The services for which fees are claimed were entirely useless to this plaintiff." Possibly that is true, but it can only be true upon the assumption that $12,000 of the negotiable bonds of the plaintiff were and are worthless. That the city council regarded them valuable, is evidenced by the fact that it required a $12,000 bond from Trego before it would permit them to pass into his possession. And that Clark regarded them valuable, is evidenced by the fact that he advanced $2,500 on them, and that he would not surrender them until the $2,500 and the interest thereon were paid. The counsel cites some cases.

*Miles v. De Wolf,* 34 N. E. Rep. 114, is a case so essentially different from this that it is not at all in point. *Fraser v. Haggarty,* 49 N. W. Rep. 116, is also essentially different, and in it is a dissenting opinion, which is the better of the two. In *Justice v. Logansport,* 32 N. E. Rep. 868, the city attorney began the litigation, carried it through, refusing to permit Justice to assist in the cases, and in that case affirmed *City of Logansport v. Dykeman,* cited above.

*Runyan v. Nichols,* 11 Johns. 547, decides that the client who resists the claim of his attorney for fees must allege a want of care and skill on the part of an attorney in the management of his business before he will be permitted to prove such a defense; and *Hopping v. Quinn,* 12 Wend. 517, by the same court, evidently does not overrule its former decision. The answer in this case tenders no issue of negligence or want of skill on part of this defendant. The question of the defendant's employment was submitted to the jury; they found that the defendant was employed. The question of the value of the services was testified to by R. W. Blue, who was an attorney for the plaintiff here, and W. R. Biddle, and S. H. Allen. None of them placed the value of the services at less than $200. The verdict was approved by the court trying the case. There was evidence to sustain the verdict. The judgment was not only right but righteous.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action by James D. Snoddy to recover from Mound City for legal services rendered in behalf of that municipality. The city had voted and issued waterworks bonds to the amount of $12,000, and had placed them in the hands of a broker in Kansas City for sale, who advanced to the city $2,500 upon them. He did not succeed, and the city constituted J. H. Trego as its agent to negotiate the sale of the bonds, and directed that Robert Kincaid should forthwith go to Kansas City and obtain the bonds and deliver them to Trego. In accordance with this direction, Kincaid went to Kansas City, taking with him a sufficient amount of money, given him by Trego, to pay the amount which the broker in Kansas City had advanced upon the bonds. Having paid the claim of the Kansas City broker, he obtained the bonds and returned with them to Mound City, but instead of turning them over to Trego, they were deposited in the Citizens' Bank, of which Robert Kincaid and Harlan Underhill were officers. Learning that the bonds had been returned and not delivered to Trego in accordance with directions, the mayor of Mound City and its agent demanded the possession of the bonds, but the demand was refused. The mayor and Trego employed Snoddy as an attorney to obtain possession of the bonds, and at once he instituted an action in replevin, in which the city of Mound City and J. H. Trego were made plaintiffs, and the Citizens' Bank, Robert Kincaid and Harlan Underhill were made defendants. The action was begun on February 20, 1888, and judgment was given against the defendants therein at the succeeding April term of the court. The city contended that Snoddy was not legally employed, that he rendered no substantial services to the city, and that there had been no ratification of his employment. The jury found the issues in favor of Snoddy, and awarded him $200 as compensation for the services which he rendered.

The evidence tends to sustain the verdict of the jury. The bonds were required to be forthwith obtained and delivered

to Trego, and the proof goes to show that they were wrongfully withheld from the city and its agent by the defendants. The excuse for not delivering them was, that there was an outstanding option for the sale of the bonds by the broker at Kansas City, and that the possession of the bonds was withheld to await the result of that option. The bonds, however, had been surrendered by the broker, and, under the order of the city, they should have been delivered at once to Trego, the agent of the city. There is testimony, therefore, that the action was brought in good faith, and the proof clearly shows that legal services of the character rendered were not overvalued by the jury. Of course the mayor, by virtue of his office alone, could not make an employment which would create a liability against the city for the services rendered; but if the city had knowledge of his employment, and of the rendition of the services, and acquiesced in and accepted the fruits of the same, the employment would bind the city.

When the suit was begun the city attorney had resigned, and a successor was not appointed until April 9, 1888. With knowledge of the institution and pendency of the suit, the city allowed Snoddy to proceed with the litigation until April 14, when a resolution was passed by the city council directing that notice should be given to Snoddy not to represent the city, and instructing the city attorney who had been appointed to take charge of the case and to take such steps as would best protect the interests of the city. Within two or three days after the passage of this resolution, and while court was in session, but before judgment was rendered, notice of the same was given to Snoddy. The city attorney, however, instead of dismissing the action, allowed it to proceed to a judgment against the defendants for the possession of the bonds. Their possession was therefore determined to be wrongful, and in view of the finding of the jury it cannot be said that the action was brought without cause or justification. The court below properly instructed the jury that if the city, knowing the facts in relation to the employment, permitted Snoddy to act as attorney and represent the city, its conduct would operate as

a ratification and acceptance of the acts of the mayor in making the employment, and that the city would be liable for what his services theretofore rendered were reasonably worth, unless with reasonable promptness it had notified him to discontinue the services.    If the city desired to dispense with the services of the attorney, or desired not to ratify the acts of the mayor in employing him, it was its duty, upon learning of the employment and institution of the action, to notify him within a reasonable time that the contract was repudiated, and that further service upon his part was not desired.    There is testimony tending to show that this was not done, and the question whether the city had knowledge of all the facts and acted with reasonable promptness in repudiating the employment was for the jury to determine.    The general finding of the jury upon the testimony offered practically settles the controversy in favor of the plaintiff below.    The acquiescence in the employment, and the acceptance of the fruits of the service, operate as a ratification, and render the city liable for the value of the services. (*Ehrsam v. Mahan*, 52 Kas. 245; *City of Logansport v. Dykeman*, 17 N. E. Rep. 587.)

The judgment of the district court will be affirmed.

All the Justices concurring.