No. 18,759.

JOHN RITCHIE, *Appellant*, v. THE CITY OF TOPEKA,
*Appellee.*

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Paving Contract—Waiver of Pro-
vision for Forfeiture for Delay.* In a paving contract it was
provided that time was material, that the work should be com-
pleted in a fixed time, and that the contractor would forfeit to
the city $10 for each day of delay beyond the stipulated time.
The city, by its own act and omission, prevented the con-
tractor from proceeding with the work for a considerable part
of the allotted time, and when an application for an extension
of the time was presented to the city authorities by the con-
tractor they agreed that the contractor should proceed with
the work thereafter and complete it within a reasonable time.
*Held*, as the city by its fault and neglect prevented the con-
tractor from proceeding with the work, and as it subsequently
agreed to an extension of the time of completion, it waived
the time provision of the original contract and is not in a
position to insist on a payment of liquidated damages for the
delay in the completion of the work.

2. SAME—*Action Involving Examination of Accounts—Reference
Proper.* In an action to recover on the paving contract the
city pleaded, by way of set-off, overpayments made on a pre-
vious contract between the plaintiff and the city for the con-
struction of a sewer, and as the settlement of the claims of the
parties involved the examination of a long and intricate ac-
count between them the court was warranted in directing a
reference of the case.

3. SEWER CONTRACT—*City Engineer to Supervise Work—Bad
Faith—To What Extent City Engineer's Estimates are Con-
clusive.* In the sewer contract it was provided that the work
should be done under the supervision and to the satisfaction
of the city engineer, that his interpretations of the plans and
specifications were to be binding and final, that he was to
decide all questions which might arise as to the amount and
quality of the work done, and he or his assistant were present
on the work almost every day during its progress. During
the time the city engineer changed the grades of the sewers,
thus relieving the contractor from much of the work provided
for in the contract, and the contractor presented claims and
secured the approval of the same by the city engineer for much

material not furnished and for a great deal of work that was not done. The estimates of the city engineer, which were not made in good faith, embraced large overcharges, and on these payments were made by the city without knowledge of their fictitious character. *Held,* that the fact that the estimates and decisions were made by the city engineer did not preclude a recovery of the overcharges by the city.

4. SAME—*Voluntary Payments—May be Recovered Back.* The rule as to voluntary payments does not prevent a recovery by the city of its money from the contractor who received the illegal and unauthorized payment from city officers.

5. SAME—*City Proper Party to Recover Overcharges.* The contract being with the city, and it having issued improvement bonds to pay for the construction of the sewer binding upon the municipality as a whole, the city is the proper party to sue for the overcharges, although the property in the benefit district will be assessed for the payment of the improvement bonds.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed February 7, 1914. Modified.

*J. J. Schenck,* of Topeka, for the appellant.

*W. C. Ralston,* city attorney, and *Frank G. Drenning,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The controversy in this action grew out of two contracts between the parties, one for the paving of streets and alleys, and an earlier one for the construction of a sewer. John Ritchie, the appellant, brought the action to recover $12,343.75 for the paving of streets and alleys in the city of Topeka under a contract with the city made in April, 1909, in which it was stipulated that the work was to be completed on or before January 1, 1910, and that for every day that the work remained uncompleted after that time Ritchie should forfeit $10 per day. The contract was not fully executed until October 27, 1910, and at that time the city engineer estimated that there was due

Ritchie the sum sued for. The city answered, setting up a counterclaim of $3000 as liquidated damages, the amount alleged to have been forfeited by Ritchie by delaying the completion of the paving for three hundred days after the stipulated time. The city also pleaded a set-off of $23,665.50 arising from alleged overpayments on a sewer contract entered into by Ritchie and his partner, Hanley, with the city on March 20, 1905. As to the set-off, it was alleged that Ritchie and his partner received payment for certain sewers not constructed, and that the city engineer, without the consent or knowledge of the city, included in his estimate such overcharges to the amount of about $5740.50. It was further alleged that the city engineer raised grades and changed the size of sewers, thus relieving Ritchie of the excavation of about 13,000 cubic yards provided for in the contract, and gave estimates of the work as if it had been fully performed in accordance with the requirements of the contract, and that in this way Ritchie was overpaid the sum of about $7800. It was further alleged that there was an overcharge in the rock excavations to the extent of $10,125, and that the city engineer included this overcharge in his estimates and thereby enabled Ritchie to obtain payment for work which was not done. In his reply Ritchie alleged that the delay in completing the paving contract was caused by the city, and further, that if the city had any right to claim a forfeiture for failure to complete the contract within the specified time it had been waived. As to the set-off claimed under the sewer contract Ritchie replied that the work was done in accordance with the directions of the city engineer, who was acting for the city, and that no changes in the work done or material furnished were made except such as were ordered by the city engineer with the knowledge of the city. He also averred that work not included in the contract was done under the direction and approval of the city engineer in place of work contracted for

but not performed, and that this substitution was made with the knowledge of the city, and that all the money paid to him under the sewer contract had been fully earned and was justly due. .

The pleadings disclosed that a trial of the case involved an examination of a long and intricate account between the parties, which included many items and was too complicated to be tried by a jury, and the court rightly determined it was a referable one and on its own motion referred the case to Robert Stone, Esquire, with power to try the issues and report his findings of fact and conclusions of law to the court within a fixed time. Upon a trial by the referee he found that Ritchie had furnished material and done work under the paving contract for which he was entitled to $10,941.33, but that because of his delay in completing the contract the city was entitled to a deduction of $2000, which left a balance due Ritchie under that contract of $8941.33. He also found that Ritchie was indebted to the city for payments made to him on overcharges under the sewer contract in the sum of $20,173.46 with interest thereon from December 18, 1907, at six per cent per annum, and that the city was entitled to a judgment against Ritchie in the sum of $16,035.48. Ritchie moved the court for judgment on the findings of fact made by the referee, contending that the conclusions of law were not justified by the facts found. This motion was overruled, as was one made by him to set aside the report of the referee. Final judgment was then rendered by the court upon the conclusions of the referee in favor of the city for $16,035.48 with interest thereon at the rate of six per cent per annum from October 23, 1912.

It is contended on this appeal that the forfeiture of $2000 for delay in finishing the paving and the deduction of that sum from the amount due Ritchie for the paving done by him is error. This contention is based on two grounds, one that the city in fact caused the

delay by its own wrong and neglect, and the other that it had effectually waived performance of the contract within the stipulated time. The finding of fact relating to the responsibility of the city for the delay of Ritchie is:

"John Ritchie was delayed one hundred days in the performance and completion of such work by reason of the failure of the said City of Topeka to move certain poles, water and gas pipes, and to lower certain water and gas pipes in said streets and alleys, and to designate the kind of catch basins to be used in certain localities."

In December, 1909, Ritchie asked the city for an extension of time in which to finish the paving, stating that circumstances over which he had no control would prevent him from completing the work within the stipulated time. The request, which was in writing, was received by the mayor and commissioners, and while they did not take any formal action on the request they did permit him to go on with the work and did continue to approve and pay his estimates as the work progressed the same as if the time of completion had not been limited. Until June 3, 1910, no objection was made by the city, but at that time a resolution was passed declaring that the city would claim damages at the rate of $10 per day for failure of Ritchie to complete the contract in accordance with its terms. On July 7, 1910, Ritchie presented to the city an application for an extension of time to complete the contract, alleging that there had been a distinct understanding between the parties that by reason of certain obstacles which he had met and the delays occasioned by the changes of grade made by the city engineer it was impossible to finish the paving at an earlier time. The mayor and commissioners did not formally grant the application, but after hearing it at a regular session attended by Ritchie, where all of the commissioners were present, it was definitely agreed that Ritchie might

go on and complete the contract, not at any specified time but as soon as it could reasonably be done. These facts are sufficient to show a waiver of the forfeiture clause of the contract and of the stipulated damages to be paid in case of delay in completing the work. The mere fact that the city allowed Ritchie to continue the work did not, of itself, operate as a waiver of the right to insist on a forfeiture, as the terms of the contract itself contemplated that work might possibly be done after the stipulated time, but the conduct of the city fairly indicated an acquiescence in the delay and a waiver of any right that it had to stipulated damages because of delay. It can not be possible that the city can tie the hands of the contractor, thereby causing delay, and then claim damages for the delay. The contract was made on April 19, 1909, and Ritchie was given until January 1, 1910, in which to complete the work. That only left him two hundred and twenty working days in which to complete the contract, and we may assume that both parties determined that the contract period was a reasonable time in which to complete the work, and yet the city, by its neglect and fault, deprived Ritchie of one hundred days of the allotted time. The fact that the city was so far responsible for the delay probably accounts for its action in going on approving estimates and making payments the same as if no time had been fixed for the completion of the work. It was said that no action was taken on the request, but it is well settled that a waiver or extension may be implied as well as expressed. (30 A. & E. Encycl. of L. 1259.) In *Coryell v. Dubois Borough, Appellant*, 226 Pa. St. 103, 75 Atl. 25, it was held that:

"Where a building contract provides for a deduction of a stated amount from the contractor's compensation for each day of delay after a time specified, the owner can not claim such deduction where he has made no objection to the delay and by his conduct has given the contractor grounds for believing that the provisions

of the contract as to the penalty for delay would not be enforced." (Syl. ¶ 2.)

Here there was more than an implication of waiver by the conduct of the city, as on the second application the city authorities, in regular session, specifically agreed that Ritchie should complete the contract, not in any specified time, but as soon as he could reasonably do the work. When the city, by its act and omission, occasioned delay, it in effect notified Ritchie that it did not regard the forfeiture clause of the contract to be binding upon him. It was estopped thereafter to insist on a provision in the contract where it had prevented the performance, but it is immaterial whether it is called estoppel or waiver. The time provision of the contract was no longer available to it. (*Dannat et al. v. Fuller,* 120 N. Y. 554, 24 N. E. 815; *King Iron Bridge & Manuf'g Co. v. City of St. Louis,* 43 Fed. 768, 10 L. R. A. 826; 9 Cyc. 608; 30 A. & E. Encycl. of L. 1255.) To enforce the provisions of a contract which the city had violated and to compel the payment of damages for which the city was in a large part responsible would be unjust and inequitable. Aside from that, the agreement made in July, 1910, between the city and Ritchie, which gave him a reasonable time thereafter to complete the contract, was in effect a substitution of the new time for the one stipulated in the original contract and operated as a waiver of the forfeiture clause. The conduct of the city throughout makes it clear that it can not claim damages for the delay in the completion of the contract.

A number of questions have been raised on the finding of liability for overpayments made by the city to Ritchie on the sewer contract. It appears from the findings that the grades of the sewers constructed were raised from one to thirteen feet above that provided for in the contract, thus relieving the contractor from much excavation, and the city paid $7479.11 on account

of excavation that was not done. There was a payment, too, of $3963.94 made for sewers and pipe which the contractor did not construct and furnish. An overpayment of $2092.13 was made by the city on account of loose-rock excavation, and $6638.28 for solid-rock excavation. Ritchie insists that the city is precluded from recovering because of the action of the city engineer in giving directions and approving estimates. It was provided in the contract that the work was to be done under the supervision and to the satisfaction of the city engineer, that the contractors were to obey his directions, submit to his interpretations of the plans and specifications, and that his explanations of them were to be final. It was also stipulated that to prevent disputes the engineer was to decide the amount and quality of the work to be done and paid for, and further that he was to decide all questions which might arise relating to the execution of the contract, and that his estimates and decisions should be final. There was a finding, too, that during the progress of the work the city engineer or his assistant were on the work inspecting it almost every day and that the inspectors for the city made measurements of the work and classifications of the material. While the engineer made monthly estimates which were submitted to the committee on claims and accounts, the overcharges were included in the estimates without the knowledge or consent of the city. The fact that the engineer was vested with supervising power and authority to interpret specifications and determine disputed questions that might arise between the city and the contractor gave him no authority to make a new contract nor to approve claims for work and material not furnished. If he had acted in good faith and exercised his judgment on *bona fide* disputes his determination would have been final as to the details of the contract, including interpretations and classifications. The contractor, however, could not have misunderstood the fictitious

character of the claims which he presented to the engineer for approval, and the action of the engineer in changing grades and including in his estimates large amounts for work not done and material not furnished can not be reconciled with honesty. The referee, however, made a specific finding on the subject that:

"The mistakes of the city engineer in the construction of the Sewer District No. 26 made in his estimate of the amount of loose and solid rock excavated, in the amount of sewer pipe and galvanized pipe laid in said system and the changes made by him in the grade of said sewer and in the width of the trenches were so gross that they can not be reconciled with good faith."

This finding answers many of the contentions of appellant as to the binding effect of the engineer's decisions and estimates. It has been decided that where parties to a contract agree that the estimates of an engineer shall be taken as correct and binding his decisions honestly made shall be *prima facie* conclusive, but it was added:

"Of course, if there were fraud, gross mistake, or the failure to exercise an honest judgment by the umpire, his estimate or award would not be binding." (*Edwards v. Hartshorn,* 72 Kan. 19, 24, 82 Pac. 520, 1 L. R. A., n. s., 1050, and cases there cited.)

There is a claim that some of the findings are not supported by the testimony, but it appears that the testimony was not transcribed and preserved as the code requires. (Civ. Code, § 574.) Some testimony was included in what purports to be a bill of exceptions, but exceptions are not now recognized in the code. (*Kelley v. Schreiber,* 82 Kan. 403, 108 Pac. 816.)

The appellee has also brought up what appears to be a fragment of the testimony in a somewhat irregular way, and while we could not in any event overthrow the findings of the referee upon such a presentation an examination of so much as has been brought here convinces us that the findings are not without support.

It is contended that the city paid the money on the .sewer contract voluntarily and is therefore precluded `from recovering it back. The rule as to voluntary pay-ments has no application here. Money can not be re-.garded as voluntarily paid where payment was pro-cured by fraud, or where the party paying it did not .have full knowledge of all the material facts. Here, as we have seen, the claims were not only illegal, but the estimates on which they were based were not made .in good faith. The city did not know that the claims presented by the contractors, and approved by the city ·engineer, included material not used and work not per-formed. The officers were dealing with public funds and had no authority to pay them out on illegal or `fraudulent claims. Being unauthorized, the officers' act `was void, and the payment made by them can not be `treated as one made by or binding upon the city. Pay-ments of municipal funds by public officers are not re-:garded as those made by individuals out of their own funds, and overpayments or other payments by public officers upon illegal demands against a municipality may `be recovered back. (*Comm'rs of Jefferson Co. v. Patrick,* 12 Kan. 605; *Village of Fort Edward v. Fish,* 156 N. Y. :363, 50 N. E. 973; *Allegheny County v. Grier, Appel-lant,* 179 Pa. St. 639, 36 Atl. 353; *County of Wayne v. .Reynolds,* 126 Mich. 231, 85 N. W. 574, 86 Am. St. Rep. :541; *State v. Young,* 134 Iowa, 505, 110 N. W. 292; *Board of Commissioners of Huntington Co. v. Heaston,* 144 Ind. 583, 41 N. E. 457, 43 N. E. 651, 55 Am. St. Rep. 192; *Frederick v. Douglas County and others,* `96 Wis. 411, 71 N. W. 798.) `

There is nothing substantial in the contention that `the money overpaid to the contractors belongs to the `persons whose property has been assessed to pay for `the sewer, and that, therefore, the city can not recover ·on this set-off. ` The contract was with the city. It `issued improvement bonds in accordance with the statute to pay for the construction of the sewer. These

bonds were binding obligations of the municipality as a whole. It may be assumed that the money recovered will be placed in the proper fund and used to discharge the outstanding improvement bonds.

The judgment against the appellant will be modified by striking therefrom the award of $2000 as liquidated damages, and so modified it is affirmed.