CITY OF TOPEKA v. FEDERAL UNION SURETY CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 19, 1914. Rehearing Denied June 18, 1914.)

No. 3943.

1. PRINCIPAL AND SURETY (§ 59*)—LIABILITY OF SURETY—CONSTRUCTION OF CONTRACTS OF SURETY COMPANIES.

The general rule that a surety should be held only where his liability is fixed by the most strict law does not apply to a corporate surety, which is engaged in the business of becoming surety for premiums supposed to be based on the amount of the risk, but, on the contrary, such contracts are construed most strongly against the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 103, 103½; Dec. Dig. § 59.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§ 374*)—CONTRACTS—SURETY ON BOND OF CONTRACTOR.

Complainant surety company executed a bond to the state of Kansas as surety for a contractor for paving with the city of Topeka, conditioned for the payment by the contractor of all claims for labor and material. Under the statute when such bond was given, no lien could attach as against the city. On completion of the contract, there was a sum due from the city to the contractor thereon, and also sums due from the contractor to subcontractors for labor and material, for which complainant was liable on its bond. In an action by the contractor against the city, the city pleaded as a set-off a prior indebtedness from the contractor exceeding the amount of his claim, and recovered judgment against him thereon. *Held*, that, there being no statutory lien in favor of the subcontractors against the city to which complainant could be subrogated, it could not enforce an equitable lien in their behalf, since there was no fund due from the city to the contractor to which it could attach.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. § 374.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by the Federal Union Surety Company and others against the City of Topeka. Decree for complainants, and defendant appeals. Reversed.

W. C. Ralston, City Atty., and Frank G. Drenning, both of Topeka, Kan., for appellant.

John L. Baker, of Indianapolis, Ind., and John S. Dean, of Topeka, Kan. (Ferry, Doran & Dean, of Topeka, Kan., and Henley & Baker, of Indianapolis, Ind., on the brief), for appellees.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. This action in equity was brought by the Federal Union Surety Company against the city of Topeka, Kan., John Ritchie, Clarence A. Ritchie, the Topeka Vitrified Brick & Tile Company, the Capital City Vitrified Brick & Paving Company, Fred Luttjohan, and H. H. Folks. The complaint was filed March 18, 1911, in the Circuit Court of the United States for the District of Kansas. The facts as they existed at the date of the filing of the bill, March 18, 1911, are substantially as follows:

On February 6, 1905, the city of Topeka let a contract to a partnership composed of John Ritchie and J. D. Hanley to construct a sewer system in sewer district No. 26 in that city. This contract was performed by the partnership, and shortly thereafter the city made payment. In 1907 the city claimed to discover that, without its knowledge, authority, or consent, large overpayments had been made to the partnership on that contract, and on December 18, 1907, an action was begun in the state court to recover on that account $23,665.50 against Ritchie & Hanley. For aught that appears in the record that case is still undisposed of. On April 19, 1909, John Ritchie was awarded the contract for certain grading, rolling, curbing, guttering, and paving on certain streets in Topeka for $72,878.04. These were all improve-

ments the expenses of which were chargeable to the adjoining property in 10 equal annual installments, and bonds were issued pursuant to section 1018 of the General Statutes of Kansas of 1909. This statute provided that:

"Such bonds shall not be issued in amount in excess of the contract price of the work or improvement, except that the installment coupons shall include the interest on such installments to the maturity thereof."

It also, after providing for payment of the amount necessary to pay the sum required to redeem an owner's land to the city treasurer, stated that:

"All sums so paid shall be applied solely to the payment of such improvements or the redemption of the bonds issued therefor."

Independently of statute there is no mechanic's lien at law or in equity, and ordinarily there is no statutory lien as against a municipality, but under early Kansas statutes it was held that contractors or subcontractors could obtain mechanics' liens as against a municipal corporation. In the chapter on Liens of Mechanics and Others the law provides, in General Laws of Kansas, § 6255 (Code Civ. Proc. § 660), that contractors may execute a bond to the state of Kansas for the use of all persons in whose favor liens might accrue by virtue of the act conditioned for the payment of all claims which might be the basis of liens, and when said bond is given, "no lien shall attach under this act."

On the date of this contract the contractor gave bond with the Federal Union Surety Company as surety to the state of Kansas, conditioned:

"Now, therefore, if the said John Ritchie shall pay all indebtedness incurred for labor and material furnished in making said public improvements as provided by the laws of the state of Kansas then this obligation shall be void, otherwise it shall be and remain in full force and effect."

Ritchie and the Federal Union Surety Company gave a second bond to the city of Topeka, but that requires no further consideration at the hands of the court. Ritchie performed this new contract with the city, except that he did not complete it in the time specified. He was paid by the city on the contract from time to time, except a balance of $10,-941.33. Upon the completion of the contract, however, he owed subcontractors, Clarence A. Ritchie, Topeka Vitrified Brick & Tile Company, the Capital City Vitrified Brick & Paving Company, and Luttjohan and Folks an aggregate of $10,378.34. On January 7, 1911, John Ritchie brought suit in the state court for the balance alleged to be due him on this contract, and on January 21, 1911, the city filed answer and a counterclaim or set-off for the alleged overpayments on the contract of 1905 for $23,665.50. On January 13, 1911, the Capital City Vitrified Brick & Paving Company brought suit in the state court against the complainant surety Company for $6,377.18, the amount alleged to be due it as a subcontractor. This suit was removed to the federal court by the surety company. On February 21, 1911, Fred Luttjohan and H. H. Folks brought suit in the state court against the surety company and John Ritchie for the sum of $711.29, alleged to be due them as subcontractors. At this stage this suit was brought.

The bill after alleging some of the facts continued:

"XI. Your orator further avers that in equity and good conscience said defendant city should be required to pay said balance for the benefit of the subcontractors and materialmen made defendants herein, and such others of the same class as may become parties to this suit, to the end that said contractors and materialmen should be paid out of the funds in the hands of said defendant city, lawfully appropriated to such use. And your orator avers that said city has no lawful right to divert said fund, or any part thereof, to the payment or satisfaction, in whole or in part, of any obligation or liability of the said John Ritchie growing out of any other transactions between the said city and the said John Ritchie, wholly apart and disconnected from the public improvements provided for by the terms of said agreement of April 19, 1909."

And the bill prayed that all the parties be required to litigate their claims to this fund in question, being the balance due upon the new contract and against the surety in this suit, and that the city be required to pay said balance into the registry of the court, and that the same be applied first to the payment of the subcontractors. This brings the facts down to the date of the commencement of this suit, but the following additional facts appear: On March 28, 1911, the Topeka Vitrified Brick & Tile Company brought suit in the state court against the surety company and John Ritchie for the amount alleged to be due it as a subcontractor, and has since recovered $863.45. Clarence A. Ritchie never brought a separate action but filed an answer to this suit on June 2, 1911, in which he claimed from John Ritchie and the surety company $2,535.50 as a balance due as a subcontractor. Subsequently the surety company paid the claims of the Capital City Vitrified Brick & Paving Company, and Luttjohan & Folks, but so far as the record shows has not yet paid the claims of Clarence A. Ritchie or the Topeka Vitrified Brick & Tile Company. On September 29, 1911, the state court, in the case referred to of Ritchie v. City, appointed Robert Stone as referee to report to the court his findings of fact and conclusions of law, and on October 23, 1912, he filed his report. On December 28, 1912, the court rendered judgment in favor of the city of Topeka and against John Ritchie, crediting him with $10,941.33 on account of the contract of April 19, 1909, charging him with $2,000 liquidated damages thereunder, and with $20,173.48 as overpayments on the contract of 1905 and interest, for $16,209.20, balance. This case was appealed to the state Supreme Court and there modified by deducting the $2,000 allowed as liquidated damages, thus making the judgment, as we understand it, in favor of the city after taking out the balance due him on the contract of April 19, 1909, $14,209.20. Ritchie v. City of Topeka (Kan.) 138 Pac. 618. In the meantime, but after the appointment of the referee in the state court, on October 11, 1911, the United States District Court appointed J. T. Hazen master to take the proofs and report his conclusions of fact and recommendations as to a decree. Upon his report the District Court entered a decree for plaintiff on February 20, 1913.

It is claimed by the surety company that this suit was commenced as ancillary to the case of the Capital City Vitrified Brick & Paving Company, which had been removed to the United States District Court, as before stated. There is nothing in the bill suggesting such

ancillary character, but that point is not material to the disposition of this case.

[1] Before proceeding to a consideration of the law questions directly involved, it may not be amiss to point out in a degree the status of the complainant. It is entitled to just the same consideration as ordinary litigants. Generally the surety is a favorite of the law, and should be held only where his liability is fixed by the most strict law. That is to say, what is known as the rule of strictissimi juris applies. These rules have no application to a corporate surety which is engaged in the business of becoming surety for premiums which are supposed to be based upon the amount of such risks. It is not in the position of a voluntary surety who signs his principal's obligation. Upon the contrary surety bonds are usually on forms prepared by the company, and in place of a strict construction in favor of such surety the instrument is construed most strongly against the surety. Contracts of such companies bear a distinct analogy to insurance, and are largely governed by the same rules in construction. American Surety Co. v. Pauly (No. 1) 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977; American Surety Co. v. Pauly (No. 2) 170 U. S. 160, 18 Sup. Ct. 563, 42 L. Ed. 987; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; United States Fidelity & Guaranty Co. v. Egg Shippers' Strawboard & Filler Co., 148 Fed. 353, 78 C. C. A. 345; Kansas City Hydraulic Pressed Brick Co. v. National Surety Co , 167 Fed. 496, 93 C. C. A. 132; United States Fidelity & Guaranty Co. v. United States, 178 Fed. 692, 102 C. C. A. 192; Hull v. Bonding Co., 86 Kan. 342, 120 Pac. 544; Lumber Co. v. Douglas, 89 Kan. 308, 131 Pac. 563, 44 L. R. A. (N. S.) 843; Empire Co. v Lindenmeier, 54 Colo. 497, 131 Pac. 437, 440; Lesher v. United States Fidelity & Guaranty Co., 239 Ill. 502, 88 N. E. 208; People v. Rose, 174 Ill. 310, 51 N. E. 246, 44 L. R. A. 124; Fidelity Co. v. Poetker (Ind ) 102 N. E. 372; Van Buren County v. American Surety Co., 137 Iowa, 490, 115 N. W. 24, 126 Am. St. Rep. 290; Getchell & Martin Lumber & Manufacturing Co. v. Peterson & Sampson, 124 Iowa, 599, 100 N. W. 550; Champion Ice Manufacturing & Cold Storage Co. v. American Bonding & Trust Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356; Crystal Ice Co. v. United Surety Co., 159 Mich. 102, 123 N. W. 619; Brandrup v. Empire State Surety Co., 111 Minn. 376, 127 N. W. 424; Allen v. Eneroth, 111 Minn. 395, 127 N. W. 426; Lakeside Land Co. v. Empire State Surety Co., 105 Minn. 213, 117 N. W. 431; Hormel v. Bonding Co., 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513; Rule v. Anderson, 160 Mo. App. 347, 142 S. W. 358; Boppart v. Surety Co., 140 Mo. App. 683, 126 S. W. 768; Town of Whitestown v. Title Guaranty & Surety Co., 72 Misc. Rep. 498, 131 N. Y. Supp. 390; Bank of Tarboro v. Fidelity & Deposit Co., 128 N. C. 366, 38 S. E. 908, 83 Am. St. Rep. 682; Long v. American Surety Co. (N. D.) 137 N. W. 41; Brown v. Title Guaranty & Surety Co., 232 Pa. 337, 81 Atl. 410, 38 L. R. A. (N. S.) 698; Young v. American Bonding Co., 228 Pa. 373, 77 Atl. 623; Pacific National Bank v. Ætna Indemnity Co., 33 Wash. 428, 74 Pac. 590; Fidelity Co. v. Parker (Wyo.) 121 Pac. 531; 32 Cyc. 306; Pingrey on Suretyship & Guaranty (2d Ed.) par. 442 et seq.

[2] The appellant contends that the subcontractors were entitled to mechanics' liens, and that they failed to file the same within the statutory period. This contention, as understood by the court, is that the bond in question was given, not under section 6255 of the Kansas Statutes, but under sections 6256 and 6257 of the same (Code Civ. Proc. §§ 661, 662). In the view taken by the court it will not be necessary to consider this question. Let it be conceded that the bond was given under section 6255, and it will not avail the surety company. In that statute it was provided, "no lien shall attach under this act," and, there being no statutory lien, the surety company contends: First, that the subcontractors are entitled to be paid out of the contract price before the owner has a right to apply the same to some other claim of his; second, the provision in section 1018 of the General Statutes of Kansas of 1909 that "all sums so paid shall be applied solely to the payment of such improvements or the redemption of the bonds issued therefor," gives the surety an equitable lien as against the fund raised for the very purpose of making the specific improvement.

It will, for the purposes of the case, be conceded that a court of equity having jurisdiction to conserve assets could entertain this suit before any claims were paid by the surety company, but, before this could be held, it must appear that there were assets to conserve. The city of Topeka owed nothing to Ritchie. On the contrary he was largely indebted to it. After the bond was given there was no lien under the mechanic's lien law, but the surety company cites and relies on Richards Brick Co. v. Rothwell, 18 App. D. C. 535. That case was based upon the federal statute, and upon the fact therein stated that the government still owed the principal contractor. But here, so far from the city of Topeka owing Ritchie, he had by fraud procured in advance on another contract more than $20,000, and upon a balancing of their accounts it owed the contractor nothing, but he owed it. There was no fund existing upon which the alleged lien of subcontractors could attach. Even if there was such a fund, if the claim is correct that the subcontractors had a lien upon the contract price, they must have derived it in some way through the principal contractor, yet in Lumber Co. v. Douglas, 89 Kan. 308, 131 Pac. 563, Douglas and Evans had a contract with the state to build a memorial building, and had given a bond of this surety company, the state paid to Douglas & Evans on account $2,000 which they in turn paid to the Chicago Lumber Company, which was a subcontractor, but also had an account against Douglas & Evans for material furnished prior thereto, and the lumber company applied this payment upon the old account and then sued the surety company on the account for material furnished for the memorial building. The court, construing the very section of the state statute here in question, said:

"After the bond was given the only relation there was between the contractors and the lumber company was the ordinary one of debtor and creditor; and, so far as the surety company is concerned, the money paid to the contractors by the state was their own, and they could do with it as they pleased. The surety company could claim nothing by way of subrogation to the rights of the state, as the state had paid in full for the work, and there was no fund or security in its hands which any claimant could reach."

In this case the surety company claims to be subrogated, not to the rights of the corresponding party, the city of Topeka instead of the state of Kansas, but to an alleged lien on the fund in favor of subcontractors, but that cannot greatly benefit it because generally there is no such lien, and the farthest any cited case goes is to hold that there is an equitable lien upon money due from the owner, and there was nothing due in this case. Equally unavailing is the claim that such a lien exists under section 2018 of the statutes of Kansas. That section refers to money paid in by the taxpayer upon his assessment, and there is no evidence that any has yet come into the hands of the treasurer, but if it appeared he had collected some of this money it would all be required to meet the bonds issued for this improvement, and there is nothing to indicate there would be any surplus over the amount necessary to pay the bonds. But wholly aside from this, the provision in question is solely for the protection of the taxpayer and not at all for the protection of the surety on the contractor's bond, and in no event would this court raise from it an equitable lien in favor of the surety company.

This case is reversed and remanded, with directions to set aside the decree heretofore entered and dismiss the bill of the Federal Union Surety Company, at its costs.

HOOK, Circuit Judge, took no part in the decision of this case.