No. 22,302.

THE CITY OF TOPEKA, *Appellee*, v. JOHN RITCHIE and THE
FIDELITY & DEPOSIT COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. CITIES—*Contractor's Indemnity Bond — Breach by Contractor—Liability of Surety Company.* Where a surety company has signed a contractor's bond guaranteeing the honest and faithful performance of a construction contract made by him with a municipality and binding the surety to hold the city harmless from all costs and damages of every kind and nature whatsoever which might flow from the breach of the contract or the contractor's infidelity, and where such contract is grossly breached and the city is swindled out of a large sum of money because of insufficient and defective construction of the work contracted for, the city's expenses, in whatever courts it was necessary to resort to for the recovery of that sum of money, are a proper charge against the contractor's surety under the terms of the bond.

2. SAME—*Employment of Special Counsel—Services Rendered and Accepted—Liability of City.* Where there is no want of power on the part of a municipality to make a contract of employment, but merely a failure to comply formally with the provisions of the statute authorizing the city to make such a contract, the city is liable for services rendered by a person informally employed by the city, when his services have been recognized and accepted by the city, and where the city has received valuable benefits from such services, following *Mound City v. Snoddy,* 53 Kan. 126, 35 Pac. 1112.

3. SAME—*When City May Employ Special Counsel.* Although a city of the first class is provided with a city attorney, whose duties are to attend to all the litigation in which the city is involved, yet the city may employ special counsel to assist the city attorney when the gravity or extent of the litigation reasonably requires the services of such additional counsel.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed October 11, 1919. Affirmed.

*Otis E. Hungate,* and *T. F. Garver,* both of Topeka, for the appellants.

*George P. Hayden,* city attorney, and *Frank G. Drenning,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal covers another chapter of some ten years' litigation about certain public improvements constructed in the city of Topeka in 1905 and 1906. Earlier and related chapters are recorded in our own reports, and in those of the federal court: *Ritchie v. City of Topeka,* 91 Kan. 615, 138 Pac. 618; *City of Topeka v. Ritchie,* 102 Kan. 384, 170 Pac. 1003; and *City of Topeka v. Federal Union Surety Co.,* 213 Fed. 958.

These earlier chapters tell of defective construction, of official delinquency, swindled taxpayers, attempts to recoup the city for overpayments for insufficient sewer construction, and of stiff battles and partial successes of bondsmen to avoid or reduce their liabilities for the shortcomings of their bonded principals.

In this case the plaintiff's petition necessarily retells much that is already chronicled in our reports. In 1905 the city of Topeka awarded a contract to John Ritchie and J. D. Hanley to construct a sewer. The Fidelity & Deposit Company, defendant, became surety for the faithful performance of that contract. The contract provided:

"29. It is further expressly agreed and understood that the said parties of the first part shall save and hold harmless the said party of the second part from any and all damages, costs and expense, of every kind, character and nature whatsoever occurring upon or about said works, or in consequence of the same being done or constructed, for the payment of which said party of the second part may become liable, whether the same is occasioned by the negligence of said parties of the first part or otherwise."

The bond provides:

"Now, therefore, if the said Hanley & Ritchie shall honestly and faithfully discharge, perform and fulfill all and singular the obligations of said contract and specifications, bound herewith, and shall save and hold harmless the said city from all liens, charges, costs, and damages of every kind or nature, whatsoever, then the above obligation to be void, otherwise to be of full force and virtue in law."

There was much defective workmanship and gross insufficiency in the construction of the sewer, but either through the negligence or connivance of the city engineer, whose duty it was to inspect and approve the work, the city overpaid the

contractors about $20,000. In 1907, the city commenced an action to recover this overpayment. In 1910, the city, being indebted to John Ritchie on another contract which was for paving, took formal action to withhold from Ritchie about $10,-000 due him thereon, the city's purpose being to apply that sum on whatever judgment it might eventually obtain against Hanley & Ritchie in its lawsuit then pending for the recovery of the $20,000 overpayment.

In 1911, Ritchie brought an action against the city to recover the $10,000 due him for the paving. The city answered, setting up the facts touching its $20,000 claim against Ritchie and his partner, and the pendency of the action against them to recover the overpayment. The city prevailed, and the judgment was affirmed with modifications by this court. (*Ritchie v. City of Topeka,* 91 Kan. 615, 138 Pac. 618.) The final judgment entered against Ritchie and in favor of the city was for $12,923.90; and that judgment, being unsatisfied, is the basis of the present action against the Fidelity & Deposit Company, which as surety bound itself to make good any and all consequences which might flow from the shortcomings of Hanley & Ritchie under the sewer-construction contract of 1905.

Plaintiff's petition alleged that, to save the city from loss, it was necessary for it, in the action of Ritchie against the city for his compensation on the paving contract, to plead the city's right to set off its claim against Ritchie and his partner for the $20,000 overpayment on the sewer contract; that the city was put to great expense on account of Hanley & Ritchie's derelictions and delinquencies; that expert engineers had to be and were employed to remeasure the sewer excavations; that certain phases of the controversy precipitated litigation in the state and federal courts, which subjected the city to court costs and attorney's fees; and for all of which the defendant surety company was alleged to be liable.

The answer of the surety company, among other matters, pleaded that the employment of an attorney and the payment of fees to him were irregular and illegal; and that certain expenditures of the city in the federal courts were not chargeable to the defendant surety company, and not within the terms of its surety obligation.

The city prevailed, and the defendants appeal.

Appellants first contend that the costs and expenses of certain federal litigation cannot be recovered against the defendant surety company. When the paving contract was completed, Ritchie owed a large amount to material men. The Federal Union Surety Company, which was surety for Ritchie, began a suit in the federal district court against the city to have Ritchie's ten-thousand-dollar paving claim against the city devoted to the satisfaction of the material men's claims. The city resisted, seeking to set off against Ritchie's paving claim its twenty-thousand-dollar claim against Ritchie. Although defeated in the federal district court, the city finally prevailed in that matter in the circuit court of appeals. (*City of Topeka v. Federal Union Surety Co.,* 213 Fed. 958.) It was proper, indeed, it was the duty of the city to maintain that litigation. Its necessity was clearly traceable to the wrongdoing of Hanley & Ritchie, for whose fidelity the present appellant surety company was bound. Moreover, the city's success in that litigation vastly reduced the appellant surety company's present liability. The trial court did not err in holding that the city's reasonable expenditures in that litigation were fairly within the terms and meaning of the surety company's bond. It may not be necessary to determine positively whether this feature of the present appeal was concluded in *City of Topeka v. Ritchie,* 102 Kan. 384, 170 Pac. 1003, when this case was here on a demurrer to the petition, but certainly the doctrine there stated is decisive here. It was said:

"The second count sets up large expenditures . . . in defending other causes in district and federal courts, all growing out of the default and opposition of the contractor. No reason is apparent why these claims should not, if proved, be recovered. All items set up in the second count which did not accrue more than five years before this action was begun are properly pleaded, and the order overruling the demurrer to the second cause of action is affirmed." (p. 390.)

But for the wrongdoing of Ritchie and those confederating with him, the city would not have been swindled out of $20,000. The logical consequences of that wrongdoing required the city to sue for the return of that large sum, to set it up as a set-off, to resist the suit of the Federal Union Surety Company, and to appeal from the erroneous decision of the federal

26—105 Kan.

district court. These consequences were not remote, but proximate, and Hanley & Ritchie's surety is bound therefor according to the tenor of its bond. (*City of Topeka v. Brooks,* 99 Kan. 643, 650, 164 Pac. 285.)

"The comprehensive significance of this language [of the bond] is such that all the claims set forth in the amended petition before us are safely immured therein beyond the power of fugacity." (*City of Topeka v. Ritchie,* 102 Kan. 384, 386, 170 Pac. 1003.)

A considerable portion of the amount sought to be recovered herein is to reimburse the city for the services and expenses of special counsel for the city, who was largely in charge of the litigation provoked by the $20,000 overpayment. The reasonableness of the attorney's fees and expenses is not assailed, but the contention is strongly made that the city unlawfully paid them; that the special attorney was not lawfully employed; that he acted as a mere volunteer, and that the payment of his fees was voluntary, and created no liability on the defendants to reimburse the city. As a part of this argument, it is pointed out that the statute provides for a city attorney whose duty it shall be to attend to the city's litigation in all courts. (Gen. Stat. 1915, §§ 1131, 1550.)

The law, however, does sanction the employment of special counsel by a city of the first class like Topeka:

"The mayor, by and with the consent of the council, may appoint . . . such other officers, servants and employees as they may deem necessary for the best interests of the city, but no such officer shall be appointed until his term of office and salary shall have been fixed by ordinance; and all contracts of employment of . . . attorneys, counselors . . . for any special purpose shall be by ordinance." (Laws 1909, ch. 70, § 1, Gen. Stat. 1915, § 1141.)

It must be admitted that the formal steps required by this statute were not followed in the employment of the city's special counsel. This lawyer had been city attorney, and after his official term expired his further services in connection with this prolonged and complicated litigation were only informally procured and continued by succeeding mayors and commissioners of Topeka. There was an ordinance passed in 1909 which related to this employment:

"An ordinance authorizing the Mayor to employ F. G. Drenning as special counsel for the trial of certain city cases now pending in the district court of Shawnee county, Kansas, and the supreme court of Kansas

*"Be it Ordained by the Mayor and Councilmen of the City of Topeka:*

"SECTION 1. The Mayor of the city of Topeka is hereby authorized to employ F. G. Drenning as special counsel to conduct the following cases:

.    .    .    .    .    .    .    .    .    .    .    .    .

*"The City of Topeka v. Hanley & Ritchie. . . .*

"The said employment of F. G. Drenning in the above cases shall begin at the expiration of his term of office as city attorney, and on April 10, 1909, and the compensation to be paid to said F. G. Drenning shall be such as shall be agreed upon between the mayor and said F. G. Drenning."

Owing to the duration and extent of the litigation, the terms of the employment of the special counsel were informally changed. Later and less formal resolutions authorizing this special counsel to proceed with the litigation were adopted from time to time by the mayor and commissioners of Topeka. His fees were formally presented and paid "by approving his bill and appropriating the $5,000 by ordinance to pay the claim."

Much law is cited by counsel for appellants that such informal employment is insufficient to fasten a liability on the city, and that consequently the city's voluntary payment of an unenforceable claim against it gives the city no right to have recoupment; but in many not dissimilar situations, this court has held that where there is no want of official power to contract or employ, but merely a failure to formally invoke that power, a city cannot withhold compensation for services rendered to and accepted by it. (*Ritchie v. City of Wichita,* 99 Kan. 663, and citations therein, 163 Pac. 176. See, also, *Huffman v. Comm'rs of Greenwood Co.,* 23 Kan. 281; *City of Ellsworth v. Rossiter,* 46 Kan. 237, 26 Pac. 674; *Mound City v. Snoddy,* 53 Kan. 126, 35 Pac. 1112; *Matheney v. El Dorado,* 82 Kan. 720, 109 Pac. 166; *Watkins v. School District,* 85 Kan. 760, 118 Pac. 1069.)

In *Mound City v. Snoddy,* supra, certain bonds of the city had gotten out of possession of the municipality irregularly; and the mayor, without the consent of the council or other formality, employed Snoddy, a lawyer, to institute an action for the recovery of the bonds. Before the action was concluded, the city council passed a resolution dispensing with Snoddy's services, and the further judicial proceedings were in charge of the city attorney. It was held that such services

as Snoddy rendered were ratified and accepted by the city government, and the city was liable for the fair value of his services. This court said:

"Of course the mayor, by virtue of his office alone, could not make an employment which would create a liability against the city for the services rendered; but if the city had knowledge of his employment, and of the rendition of the services, and acquiesced in and accepted the fruits of the same, the employment would bind the city." (p. 130.)

(See, also, *Thacher v. County of Jefferson*, 13 Kan. 182; *Doster v. Howe, Treasurer, &c.*, 28 Kan. 353; *Smith v. Mayor of Sacramento*, 13 Cal. 531; *Hornblower v. Duden*, 35 Cal. 664; *Denver v. Webber*, 15 Colo. App. 511; *State, Hoxsey, pros., v. The City of Paterson*, 40 N. J. L. 186; 2 Dillon, Municipal Corporations, 5th ed., § 824; 3 McQuillan, Municipal Corporations, § 1173.)

While a Kansas municipality cannot needlessly employ special attorneys to do the ordinary professional work which the city attorney is by his office required to do, yet it often happens, and undoubtedly did happen in the present instance, that a city may be so greatly harassed with suits that it would be a physical impossibility for the city attorney to attend to all the legal business of the municipality without the assistance of special counsel. In such cases, the employment of special counsel is lawful and proper. The court holds that there was no want of power on the part of the city to employ special counsel in this protracted litigation, and that the city's failure to exercise that power formally before employing the special counsel did not relieve the city from its obligation to pay him after his services were rendered and accepted by the city, and after it reaped the benefits of his skill and industry. And the city, having lawfully paid the reasonable value of the services of the special counsel, is now entitled to recoupment against the defendants.

The other points urged by defendants have been carefully considered. They relate chiefly to matters disposed of when this case was here on demurrer, and need no further discussion. The judgment is affirmed.