## SMITH v. MAYOR AND COMMON COUNCIL OF SACRAMENTO CITY *et als.*

WHERE the charter of a city authorizes the City Council "to make by-laws and ordinances, not repugnant to the Constitution and laws of the United States, or of this State; to make appropriations for objects of city expenditure; to purchase, receive, and hold, for the use of the city, real and personal estate; and to pass such other by-laws and ordinances for the regulation of said city as they may deem necessary;" the authorities may employ Attorneys to protect the interests of the city in litigation.

And this is true, even if the charter provides for a City Attorney to attend to the business of the city; other counsel may be employed when necessary.

The appropriation of five thousand dollars to Alpheus Felch, legal.

APPEAL from the Sixth District.

The case is sufficiently stated in the opinion. The Court below granted a perpetual injunction against the payment of the fee. Defendants appeal.

*Moore & Welty*, for Appellants.

1. The validity of municipal ordinances is purely of common law cognizance. (26 Wend. 131; 10 Paige, Ch. 539; 9 Id. 22, 388; 6 Met. 425; 1 Edw. Ch. N. J. 588; 1 B. Munroe, 216.)

2. The 7th Section of the City Charter confers ample power to pass the ordinance in question.

*Clark & Gass*, for Respondent.

I. Equity has jurisdiction: 1. Because the plaintiff had no adequate remedy at law. 2. If the plaintiff had a right of action for damages, then each tax-payer in the city had the same right,

and equity interferes to prevent a multiplicity of suits. 3. The taxes raised each year are for specific purposes, and are held in trust by the Common Council, and equity will compel the proper application of the fund. We seek not to interfere with the Common Council in the exercise of its legislative functions, but to prevent the Mayor and Treasurer acting under an unconstitutional ordinance. (15 Barb. 213—264; 13 Id. 567; 16 Id. 392; 24 Id. 187; 12 How. Pr. R. 496; 3 Id. 441; 3 Edw. Ch. R. 421; 22 Conn. 552; 1 Barb. Ch. Pr. 640; 6 Paige Ch. 88.)

II. Municipal corporations have no power or authority, except what is expressly granted by their charters. (*Low* v. *City of Marysville*, 5 Cal. 2—14; Angell & Ames on Cor. 97; 13 Mass. 271; 2 Denio, 110; 4 Pet. 164; 2 Cal. 524.) That clause in the charter authorizing the Common Council "to make appropriations for any object of city expenditure," must be limited to those particular objects which are specified in Sec. 7 of the charter, and which are purely of a municipal character. (5 Cal. 214; 13 Mass. 278; 22 Conn. 552; 2 Denio, 110; 4 Pet. 170.) If money is required for any other than the ordinary purposes, it must be raised by an extraordinary tax, sanctioned by a vote of the citizens. (City Charter, Sec. 16.)

The Council were not authorized to employ any person to assist the City Attorney, or to perform his duties. (3 Cal. 122; Charter, Sec. 39; 12 Mo. 446.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

This was a bill filed by the plaintiff, a tax payer of Sacramento City, to restrain the payment of five thousand dollars, appropriated by the late city authorities to Alpheus Felch, as a fee for contesting before the Supreme Court of the United States, the title of John A. Sutter, to lands within the limits of the city.

Leaving out minor questions, the principal point on which the case turns, is, whether the Common Council had power to pass this ordinance.

The charter authorizes the City Council "to make by-laws and ordinances, not repugnant to the Constitution and laws of the United States, or of this State; to make appropriations for objects of city expenditure; to purchase, receive, and hold, for

Smith *v.* Mayor of Sacramento.

the use of the city, real and personal estate; and to pass such other by-laws and ordinances for the regulation of said city as they may deem necessary."

It seems to be conceded that the city claimed certain real estate within the municipal limits which *might* be injuriously affected by the litigation in question.

We are not aware of any well recognized rule of construction which goes to the extent of holding that under a general provision like this, the power of protecting the interests of the city by the employment of counsel, is denied to the city authorities. The legal protection of the property may be as much involved in procuring competent Attorneys, or counsel, as in paying the costs and expenses of defending actions brought for the recovery of its real or personal property. We apprehend if a delinquent Treasurer escaped with the money of the city to San Francisco, the city would be authorized under the old charter, to employ Attorneys there to recover the money; or if bonds of the city had been improperly sent to New York for sale, that the authorities might employ a lawyer there to restrain their negotiation. The duty of protecting the public property carries along with it the duty to employ the usual means of protecting it. Legal assistance stands, as a means for the protection of property, in direct relation to the general power to hold, acquire, preserve, and protect it. There is no difference in this respect between one sort of protection and another, between the charge of the lawyer and the charge of the Clerk, between laying out money to buy a safe to keep the money in, and laying out money to employ a lawyer to recover the money improperly withheld. It is true, the charter provides that an attorney shall be elected by the people to attend to the business of the city; but this does not prevent the employment of other counsel when it is impossible for the Attorney of the city to discharge the required duty. Nor is it important that the suit was one in which the United States was nominally or beneficially a party. The interest of the city would be the same in securing a peculiar and particular attention to the litigation as if she were the sole party contesting with the claimant of the property.

We say nothing here of the policy, or justice, or motive, of this act.

---

---

It is urged with great force that the tax-payers have been made by this ordinance to pay out of their own property for clouding and defeating its title. If this claim involved only a contest between two sets of titles, represented nearly equally by the people of the city, unquestionably such partial and oppressive procedure as would tax one-half for the benefit of the other half, and make the former contribute the means to destroy their own titles, would be so flagrant an abuse of power in the representatives of all, as to call for the restraining powers of the Courts.

But the case is not so presented. As it stands here, it professes to be the mere effort of the city authorities, who were the Trustees of the city property, to protect the true estate, by an expenditure which seems to us to be within the limits of their power. Whether they should have exercised it is another question. That is a question of legislative expediency, with which we have nothing to do.

Judgment reversed, and cause remanded for a new trial.