## F. A. HORNBLOWER v. C. W. DUDEN.

POWERS OF BOARDS OF SUPERVISORS.—Boards of Supervisors possess the power, as incidental to that of buying, selling, and leasing of property, and the management, care, and preservation thereof, as conferred by statute, (Stats. 1855, Sec. 9, p. 51,) to take all legal measures necessary to that end, by suit or otherwise, and therein are vested with large discretionary powers.

IDEM—EXERCISE OF DISCRETION.—If, in the exercise of their judgment and discretion, the Board of Supervisors conceive that the interests of the county are involved in a certain question, and thereupon take legal measures, by suit or otherwise, to advance or protect those interests, the expense thus incurred becomes a legal charge against the county, notwithstanding the Courts might ultimately hold that the Board had adopted the wrong remedy, or were entitled to no remedy whatever.

MANAGEMENT OF RAILROAD STOCK OWNED BY A COUNTY.—A county owning stock in a railroad company is directly interested, like any other stockholder, in the conduct and management of its affairs, and, as a consequence, in the selection of its officers. The county would have a right, through her Board of Supervisors, to contest the election of such officers, if deemed to have been illegal, and to that end to adopt any remedy she might be advised was legal, and the expense thus incurred would become a legal charge against the county. Courts can exercise no control over the judgment and discretion possessed by Boards of Supervisors in such cases.

IDEM—EMPLOYMENT OF COUNSEL.—Boards of Supervisors have power to employ other counsel than the District Attorney to assist in or to conduct the prosecution or defense of any suit to which the county is a party, which power extends equally to suits to which she is a party upon the record and to those in the prosecution or defense of which she has or is supposed to have some interest. The judgment and discretion of the Board in the exercise of this power are not open to review by the Courts.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

This was an action to procure the mandate of the Court below to compel the defendant, who was the Auditor of El

Dorado County, to issue an order on the County Treasurer for the amount of the plaintiff's account, which had been first allowed by the Board of Supervisors, then rejected by the defendant as Auditor, and thereafter allowed again by the unanimous vote of the Board. The defendant thereupon again refused to issue said order. The further facts were as follows:

An election was held for Directors of the Placerville and Sacramento Valley Railroad Company, in February, 1867. About three thousand eight hundred shares of undisputed stock had been issued by the company prior to this election, of which two thousand shares were owned and held by El Dorado County—upon which the Chairman of its Board of Supervisors (O. H. Burnham) was authorized to vote at the election. Burnham voted these shares for F. A. Bee, and others, for Directors, who received many other legal votes; but ten thousand shares of stock were voted for H. H. Hartley and others, by C. E. McLane, as proxy for Louis McLane—against the legality of which last votes said Burnham protested on behalf of the county; notwithstanding which protest, Hartley and others were declared duly elected, and held the offices of Directors accordingly. After this election, said Board of Supervisors, at a regular session, passed an order authorizing their Chairman (Burnham) to employ counsel to defend the interests of the county in all railroad matters—whereupon he proceeded to San Francisco and retained James McM. Shafter, Esq., to contest said election on behalf of said county, at an agreed fee of five hundred dollars. The counsel so employed brought an action of *quo warranto* in the name of J. G. McCullough, Attorney General, upon the relation of said F. A. Bee, against H. H. Hartley *et als.*, to try the title to said offices, and rendered the service according to the agreement; for which services said account was duly presented to said Board, and by them allowed and ordered paid, as stated, it having been first assigned to the plaintiff. At the time of engaging the

84

counsel, there was a District Attorney in El Dorado County, duly qualified as such, and competent to the discharge of the duties pertaining to his office.

· The plaintiff had judgment in the Court below, and the defendant appealed therefrom and .from an order denying a motion for new trial.

*Geo. E. Williams*, for Appellant.

Upon the face of the demanded account, it is for legal services in the case of *McCullough* v. *Hartley et als.* That action was *quo warranto*, brought by the Attorney General on the relation of F. A. Bee *et als.*, to try the right of the defendants, Hartley *et als.*, to the offices of Directors of the Placerville and Sacramento Valley Railroad Company. In this action, it is claimed that respondent's assignor acted as counsel, and that he acted under a contract with the Board of Supervisors. This contract is shown to have been verbal, and to have been made with the Chairman of the Board, under a general order of the Board authorizing the employment of counsel to protect the interest of the county in railroad matters. Shafter had full notice that the employment was under this general order. It is submitted that on the trial of this mandamus it was necessary for the respondent to show that the employment of Shafter to bring the suit of *McCullough* v. *Hartley et als.* would, in some manner, protect the interest of the county. The case was an action unwarranted by law, and could not be maintained. *Quo warranto* could not be maintained to try the right of the relators or the defendants to the offices of Directors of the railroad company. The proper action or proceeding for that purpose is under section fifteen of the general Act relating to corporations. The reply of respondent's counsel may be that the bringing of the action of *McCullough* v. *Hartley* was a mistake as to the remedy, and that Shafter acted in good faith and should be paid for his services, whether he accomplished anything or not. While such an answer might avail

between private individuals, it will not do, at any rate, where the county is not a party to the action. Where the law points out a certain course to be pursued to attain a certain end, public officers, at least, are bound to pursue that course, and those that they employ are bound to know the law and to pursue it, or they must suffer the consequences.

The law has provided the Board of Supervisors with an attorney, paid out of the county treasury, to attend to all business, and the statute does not confer the power upon them to employ another attorney to be paid out of the county treasury, whilst the District Attorney is ready and willing to perform the duties of his office. It is the duty of the District Attorney to bring and defend all suits to which the county is a party; and should any such suits be appealed to the Supreme Court, it is the duty of the Attorney General to prosecute or defend for the county in that Court. The county being thus provided with proper attorneys, can the Board of Supervisors draw money from the treasury to pay other parties to perform the duties of these officers? If so, it is at least necessary that there should appear to have been some absolute necessity, such as the inability or incompetency of the District Attorney. In this case, no reason appears in the minutes why they authorized the Chairman of the Board to employ an attorney; and, to deprive their action of all shadow of reason, the evidence shows that the District Attorney was ready and willing to perform his duties.

*J. G. McCallum*, for Respondent.

In making the contract with Shafter, the act of the Chairman of the Board was the act of the Board itself; but were it held otherwise, its subsequent ratification by the Board made it binding and obligatory on the county. (*The People, etc.* v. *Swift*, 31 Cal. 26; *Zottman* v. *San Francisco*, 20 Cal. 173.) Even where a contract has not been ratified, yet when the services are performed and the benefit received, when the contract is executed, "it will be presumed, for the pur-

poses of justice, that the authority exercised by the officers of the corporation was properly delegated to them, and that contracts made by them without authority have been ratified." (*San Francisco Gas Co.* v. *The City of San Francisco*, 9 Cal. 453.) Moreover, the appellant's veto upon the claim ended his power as Auditor over it. (Stats. 1862, Sec. 4, p. 130.) In *Smith* v. *The Mayor of Sacramento*, 13 Cal. 531, each material question involved in this case is expressly decided for the respondent: first, that a municipal corporation has the right to employ counsel in a cause in which it was not a party to the record; and second, notwithstanding it had its own attorney, whose duty was to defend its interest in legal proceedings. (Upon the latter point see, also, *Butler* v. *City of Charleston*, 7 Gray, Mass., 12; 31 Penn. 175, 185; 5 Cal. 288; 6 Cal. 254; 7 Cal. 361; 9 Cal. 453; 16 Cal. 255.)

By the Court, SANDERSON, J.:

The ultimate question involved in this case is whether the plaintiff's claim is a legal charge against the county. On the part of the appellant it is insisted that it is not—first, because the services for which the claim is made were rendered in a matter in which the county had no interest, and in respect to which, therefore, the Board of Supervisors had no power to take any action whatever; and second, because if the matter in respect to which the services were rendered was a matter in which the county was interested, and in which, therefore, the Board had power to act, the Board, nevertheless, had competent counsel in the person of the District Attorney, and therefore had no power to employ the plaintiff's assignor.

The first proposition seems to be founded upon what we consider to be an erroneous idea, viz: that if a Board of Supervisors participates in a legal controversy in which it may appear, at the outcome, that the county had no legal interest, the whole action of the Board in the matter must be considered as in excess of their jurisdiction, and therefore

void. If such were the case, the power of the Board to act in all legal controversies, and in respect thereto incur expenses on behalf of the county, would depend entirely upon the result of the contest; if favorable to the county, the expenses incurred would become a legal charge against the county; if unfavorable, the parties rendering the services would be left without compensation. The power of the Board cannot, as we consider, be measured by such a rule.

Boards of Supervisors are vested with a variety of powers touching the administration of county affairs, among which are the buying, selling, and leasing of property, and the management, care, and preservation thereof, and, as incidental thereto, the taking of all legal measures necessary to that end, by suit or otherwise; and in the exercise of those powers they are necessarily endowed with a large discretion. (Stats. 1855, Sec. 9, p. 51.) If, in the exercise of their judgment and discretion, they conceive that the interests of the county are involved in a certain question, and thereupon take legal measures, by suit or otherwise, to advance or protect those interests, the expenses incurred would become, in our judgment, a legal charge against the county, notwithstanding the Courts might ultimately hold that they had adopted the wrong remedy, or were entitled to no remedy whatever. We do not, of course, intend to be understood as implying that the county would be liable in a case where she obviously had no interest. There must, undoubtedly, be some ground for the action of the Board, some reason for supposing that the interests of the county are involved. She cannot be made liable in respect to a matter in which she is manifestly not concerned, by any action of the Board.

We have not indulged in the foregoing remarks because we are at all in doubt as to the interest of the county in the matter in which the services of the plaintiff's assignor were employed by the Board, but because they seem to be justified by the general scope and tenor of the appellant's argument. On the contrary, we consider the interest of the county both real and apparent.

The case shows that the county was, at the time of the proceedings in which the services in question were rendered, the owner of two thousand shares of the capital stock of the Placerville and Sacramento Valley Railroad Company, of the nominal value of two hundred thousand dollars. She was, therefore, a stockholder, and, as such, directly interested in the conduct and management of the affairs of the company, and therefore in the selection of its officers. She had precisely the same rights as any other stockholder, and if she, in the persons of her authorized agents, believed that those officers had been chosen by illegal votes, she had the same right to contest their election which any other stockholder had, and to that end to adopt any remedy which she might be advised was legal and proper.

The stock owned by her is property, with the care and preservation, management and control of which the Board of Supervisors are expressly vested, and if they believed that the affairs of the railroad company would be better managed by certain individuals than by certain other individuals in the capacity of officers, they not only had the power but it was their duty to adopt all lawful ways and means to place the affairs of the company under the management of the former. To do so would be "to take care of and preserve the property of the county." Over their judgment and discretion in the matter the Courts can exercise no control. In the matter of judgment they may or may not be in error, but whether they are or not, for all the purposes of judicial action, is wholly immaterial.

The point as to the power of the Board to employ other counsel than the District Attorney, is answered by the case of *Smith* v. *The Mayor of Sacramento*, 13 Cal. 533, and nothing need be added to what is there said. While the power is not expressly conferred, yet it is obviously embraced in the general power to control the prosecution and defense of all suits to which the county is a party—which we construe to mean not only suits to which she is a party upon the record, but all suits in the prosecution or defense of which she has

or is supposed to have an interest—and in the further power "to do and perform all such other acts and things as may be strictly necessary to the full discharge of the powers and jurisdiction conferred on the Board." (Sec. 9, Sub. 13.)

There are a variety of circumstances under which the. interests of the county might be neglected or wholly sacrificed, unless the Board has authority to employ other counsel than the District Attorney. He may be incompetent, or sick, or absent from the county, or engaged in other business, or the business in hand may be of such magnitude and importance as to demand, on the part of the Board, in the exercise of such foresight and care only as business men bestow upon important matters, the employment of additional counsel. There is no reason why public as well as private interests should not be subserved by the employment of several counsel, when the exigencies of the case are such as to demand it, in the judgment of prudent men; and we are satisfied that the Legislature has not been so unwise as to render such a course impossible. Undoubtedly, the Board should not put the county to the expense of extra counsel unless extra counsel is needed. The presumption is that they will not; but, in any event, it is a matter in which their judgment and discretion is not open to review by the Courts.

Judgment and order affirmed.

Mr. Justice RHODES expressed no opinion.