CHARLES SCOTT, a Resident, Citizen, and Taxpayer in the City of Jamestown, County of Stutsman, State of North Dakota, Bringing This Action on Behalf of Himself and All Other Citizens and Taxpayers Similarly Situated, Appellant, v. THE CITY OF JAMESTOWN, a Municipal Corporation, C. B. Buckley, as Mayor of the City of Jamestown, William Depuy, as Auditor of the City of Jamestown, and C. R. Hodge, as Treasurer of the City of Jamestown, Respondents.

(217 N. W. 668.)

**Municipal corporations — failure to redistrict city no bar to employing assistant to city attorney.**

1. The effect of failure on the part of the city council to redistrict the city as

----

Note.—(2) On power of municipality to employ special counsel to assist city attorney, see annotation in L.R.A. 1917D, 255, 256; 19 R. C. L. 774; 3 R. C. L. Supp. 972.

required by law cannot be litigated in an action to prevent the city from entering into a contract for the employment of assistants to the city attorney.

**Municipal corporations — assistant to city attorney need not be a resident of city.**

2. The mayor and the city council of a city have the power to appoint attorneys to assist the city attorney in litigation affecting the interests of the city, and are not required to select these assistants from among resident lawyers.

**Municipal corporations — city attorney's assistant may be paid from "miscellaneous" item in budget.**

3. While the city is bound by the provisions of chapter 169 of the Session Laws of 1925, being §§ 3684a1 to 3684a13 of the Supp. 1925, and cannot incur any liability in excess of an appropriation made therefor in the final budget, nevertheless, when the city has in its budget an item known as "miscellaneous" levied under the provisions of § 3677 of the Code (Comp. Laws 1913) known as "contingent expenses not otherwise provided for" it may appropriate money from this fund to pay for the services of assistants to the city attorney in pending litigation affecting the interests of the city, and may enter into a contract to secure such assistance when the resolution providing for the expenditure specifies a definite maximum amount.

Opinion filed January 16, 1928. Rehearing denied February 24, 1928.

Municipal Corporations, 43 C. J. § 52 p. 99 n. 89, 94; § 1620 p. 890 n. 12; 44 C. J. § 4116 p. 1161 n. 72.

Appeal from the District Court of Stutsman County, *Jansonius,* J. Affirmed.

*S. E. Ellsworth,* for appellant.

Such board (board of education) has no implied power to employ private counsel either in place of or to assist the city attorney to defend the board in a suit. Dunman v. Webster (Cal.) 70 Pac. 1063.

"It is settled in this state (California) that no order made by a board of supervisors is valid or binding unless it is authorized by law. No claim against a county can be authorized unless it be legally chargeable to the county; and, if claims not legally chargeable to the county are allowed, neither the allowance nor the warrants drawn therefor create any legal liability." Modoc County v. Spencer (Cal.) 37 Pac. 483.

"The provisions of § 2264, R. C. 1895 (corresponding to §§ 3676, 3679, Comp. Laws 1913) are mandatory and prohibitive, and no

contract requiring a disbursement of city funds can be made by the city council, and no expense can be incurred by any city officer or officers, unless a previous appropriation has been made covering the expense involved in the same." Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726.

"It is well settled that courts have power, and it is their duty, to declare void and inoperative, unreasonable, discriminatory and oppressive ordinances adopted by a municipal corporation in the exercise of general powers bestowed upon it." Bowie v. Painter (Tex.) 255 S. W. 498.

Discretion vested in a municipal body or other public body must be exercised reasonably. Erickson v. Cedar Rapids (Iowa) 185 N. W. 46; Bismarck v. Hughes, 53 N. D. 838, 208 N. W. 716.

*C. S. Buck,* for respondents.

A municipal corporation has implied power to employ additional counsel if, in the opinion of the governing body, the interests of the city require such assistance. Tiedeman, Mun. Corp. p. 317, § 176, citing Kennie v. Waverly, 42 Iowa, 437; Smith v. Mayor, 4 Pac. 531; Hugg v. Camden, 20 N. J. Eq. 6; Langdon v. Casselton, 30 Vt. 285; Wallace v. Mayor, 29 Cal. 180.

"It is true, the charter (Sacramento) provides that an attorney shall be elected by the people to attend to the business of the city; but this does not prevent the employment of other counsel when it is impossible for the attorney of the city to discharge the required duty." Smith v. Sacramento, 4 Pac. 531.

"Resulting also from the power to make contracts, to own property, and to incur liability, is the authority in a municipal corporation, in the absence of express or implied restrictions, to employ an attorney to conduct or defend suits in which the corporation is interested in its corporate capacity." Treeman v. Perry (Okla.) 65 Pac. 923; Boise City v. Randall, 8 Idaho, 119, 66 Pac. 938.

BURR, J. The complaint alleges: The city of Jamestown has had a population of over 4,000 inhabitants for more than fifteen years last past; during all of this time the city has been divided into but 4 wards; in violation of the law the mayor and the city council have refused repeatedly to redistrict the city into six wards; on or about the 25th day

of August, 1927 four civil suits had been brought against the city by riparian owners along the James River below the city and that these suits for damages aggregate the sum of $84,000; one C. S. Buck an attorney at law of Jamestown is now and for several years last past has been the legally appointed city attorney of Jamestown, being paid a salary for his services, and he is an experienced lawyer, competent to defend the city in these law suits; notwithstanding this the present city council has proceeded to enter into a contract with one George Thorpe of Fargo and with one P. W. Lanier of Jamestown, both practicing lawyers, to assist the city attorney in the trial of said damage suits for a fee of not to exceed $1,000 for each of said assistants; this contract has been entered into without any appropriation of money having. been made by said council in the annual budget or in connection with the passage of the resolution for employment; and that the city officials are intending to pay for the services and will proceed to expend money without having made an appropriation under such contract, and so plaintiff seeks to enjoin the city of Jamestown permanently from entering into any such contract for legal services.

There is much in the original complaint and the amended complaint which it would have been better to have left unsaid. The excuse for the insertion of this extraneous matter is the alleged necessity for showing bad motives and arbitrary acts on the part of the city council in its attitude toward the damage suits the attorneys selected and the professional standing of reputable lawyers. As we view it all this matter is superfluous.

The answer admits practically all of these allegations except failure to obey the law as to budget and appropriation. The case was tried in the district court on its merits and at the trial of the case it appeared the action of the city council in entering into such contract for assistance to the city attorney was done at the suggestion of the city attorney himself. He appeared before the council and requested aid. It also appeared from the evidence that it has been the custom of the city for years, in the preparation of its annual budget, to include an item known as "miscellaneous" and to levy such "miscellaneous" fund; that the same was included in the budget for the last year, made up in July of 1927, and that there is in said fund approximately $6,000; that the city council appropriated or intends to appropriate from

said "miscellaneous" fund a sufficient sum to pay for the services contracted. The district court denied the injunction, dismissing the action, and the plaintiff appeals.

There are fifteen specifications of error set forth, ten of them dealing with the action of the court in the reception or rejection of testimony. These ten specifications concern the attempt on the part of the plaintiff to show the pending suits referred to are ordinary transactions, brought by ordinary lawyers and are such that the present city attorney can defend them without assistance. It is evident therefore that the testimony offered in this respect, or sought to be brought out from the examination of witnesses, had for its purpose the showing there was no necessity for the appointment of special counsel to assist the city attorney. In other words the purpose was to show the city council did not act in a reasonable and prudent manner in the whole transaction. The remainder deal with the alleged errors of law in passing on the issues presented.

As his first contention appellant states the individuals claiming to act as the city council are without power to transact any business for and on behalf of the city for the reason that though elected to the position which they hold as members of the city council they have failed to redistrict the city in accordance with the provisions of § 3582 of the Comp. Laws, and therefore all of the action of the city council with reference to these damage suits and the employment of counsel is null and void.

His second contention is that in any event a city council, constituted as the defendant council is, has no authority to hire special counsel, because under the provisions of § 3630 of the Code (Comp. Laws 1913) it is the exclusive duty of such city attorney to represent the city; that a city council has no power except such as is expressly given it by statute, and there being no provisions in the statutes of this state giving it power to hire additional counsel, it cannot assume such authority.

His third contention is that even if the city council have the right to employ special counsel to assist the city attorney nevertheless the employment of counsel outside of the city, as was done in this case, and the employment of a local attorney whose professional ability is attacked, is such an arbitrary exercise of power and so unreasonable

that the city should be enjoined from entering into a contract for their employment.

His fourth contention is that even though the city has the power to enter into a contract with the counsel in view, nevertheless it cannot be done in this case for the reason that the contract of employment calls for the expenditure of a sum not to exceed $2,000 and no appropriation has ever been made by the city council in advance to pay this or any other sum for such purpose and that the proposed expenditure was never included in the city budget.

The first point raised amounts to a collateral attack upon the city council and its powers. The city is incorporated as a city and has been functioning as such for many years. Whether failure to redistrict affects its status cannot be litigated in this proceedings as the validity of an incorporation can be attacked by the state only. See Hammer v. Narverud, 142 Minn. 199, 171 N. W. 770; Albuquerque v. Water Supply Co. 24 N. M. 368, 5 A.L.R. 519, 174 Pac. 217. See also 43 C. J. 99. There is a general law under which cities, constituted as this city purports to be, are organized; the city is organized and operates under the general laws and this is sufficient to prevent collateral attack. See Coe v. Los Angeles, 42 Cal. App. 479, 183 Pac. 822; Dunn v. Burbank, 190 Iowa, 67, 179 N. W. 969. As said by this court in Ward v. Gradin, 15 N. D. 649, 109 N. W. 57:

"The existence and authority of a municipal corporation acting under color of law cannot be questioned collaterally by private suitors." All this applies to attacks on the process of incorporation itself, and much more so when incorporation is admitted but the complaint addressed to alleged failure of duty. Under our statute we take judicial note of the existence of the city (§ 3560) and if officials fail in their duties there are legal methods to compel performance.

The second contention is based upon the theory that because the city council had acted in the selection of a city attorney it has no power to hire special counsel. Appellant claims that § 3630 of the Code which says, "The city attorney shall perform all professional services incident to his office and when required shall furnish his opinion upon any subject submitted to him by the city council or its committees," means that when a city attorney is employed no one else can act as legal adviser for the city during his term of employment, no matter what the

subject of the suit may be, no matter how complicated the case may be, no matter what the wishes of the city attorney may be; and all because the powers of the city council are such only as are authorized by statute and there is no special provision giving it power to employ an assistant city attorney.

It will be noted in this case the employment of the assistant counsel was not against the protest of the city attorney. It was done at his suggestion and at his request. The record shows the suits against the city up to the time of the employment, were four in number asking for damages aggregating $84,000. The record shows further that numerous cases of a similar nature were contemplated and that the litigation would be exhaustive and fraught with great importance to the city. It becomes important therefore to determine whether, under our statute the powers of the city council are limited expressly to those which are granted or whether other powers incidental thereto and necessary for carrying out the purposes for which the city is incorporated may and are included. Section 3561 of the Code says:

"Cities organized under this chapter shall be bodies politic and corporate . . . may sue and be sued, contract and be contracted with, . . . and exercise all the powers hereinafter conferred." The power to sue and the right of others to sue the city necessarily imply the right to protect the interest of the city in such suits. The appellant says this right has been fully exercised when a city attorney has been appointed. This would mean that if the city attorney were unable to attend to the duties, or had too much city business to give proper attention, or through illness or some other cause did not attend to the business of the city and yet failed to resign there would be no way for the city council to protect the interests of the public. Under the provisions of § 3599, subd. 78 the express power is conferred upon the city council "to . . . make all regulations proper or necessary to carry into effect the powers granted cities. . . ." Among the powers granted cities is the right to sue and be sued and therefore the city council has a right to make regulations regarding law suits as will be necessary to take care of such matters properly. In the case of Denver v. Webber, 15 Colo. App. 511, 63 Pac. 804 the court held that the town council of the town of Colfax had power to employ special counsel to appear in litigation arising out of proceedings to annex

the town to the city of Denver though there was a town attorney whom the council by resolution had required "to represent the town in all legal proceedings . . . in which it may become involved." This was a matter in which the town of Colfax was interested because of an attempt to annex it to the city of Denver. In the annexation proceedings litigation arose and the town council employed assistant counsel. The supreme court of Colorado says that this town council has not been "expressly restricted by legislation" and therefore had the power to employ. It goes into quite an exhaustive discussion of the rights and powers of towns and cities and indicates that in the absence of statutory prohibition the town council has such a right, in the exercise of prudent and ordinary care, such as is contemplated in the proceedings at bar.

In Hornblower v. Duden, 35 Cal. 664, it was held that the board of supervisors of a county had the right "to take all legal measures necessary to that end, by suit or otherwise," to carry out the powers possessed by it in "the management, care and preservation" of the property of the county. It says, "if, in the exercise of their judgment and discretion the Board of supervisors conceive that the interests of the county are involved in a certain question, and thereupon take legal measures, by suit or otherwise, to advance or protect those interests, the expense thus incurred becomes a legal charge against the county."

It says further that:

"Boards of Supervisors have power to employ other counsel than the District Attorney to assist in or to conduct the prosecution or the defense of any suit to which the county is a party, which power extends equally to suits to which she is a party upon the record and to those in the prosecution or defense of which she has or is supposed to have some interest." In the earlier case of Smith v. Sacramento City, 13 Cal. 531, it was held that:

"Where the charter of a city authorizing the city council 'to make by-laws and ordinances not repugnant to the Constitution and laws of the United States or of this state' . . . the authorities may employ attorneys to protect the interests of the city in litigation. . . . This is true, even if the charter provides for a city attorney to attend to the business of the city; other counsel may be employed when necessary."

Our statute gives to the city council powers to make by-laws and "to adopt such other ordinances, not repugnant to the Constitution and laws of the state, as the general welfare of the city may demand." See § 3599, subd. 77, of the Code.

Appellant cites the case of Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164. The only question was the right to recover on an implied contract for services rendered. There was no express contract made with the attorney employed nor any action taken authorizing or ratifying his employment, and so it was held that he could not recover. Appellant cites the case of Denman v. Webster, 7 Cal. Unrep. 65, 70 Pac. 1063 affirmed in 139 Cal. 452, 73 Pac. 139. The case is not in point because this was a case where the board of education of the city of San Francisco, being a department of the city under its charter, sought to employ independent counsel to defend actions brought against the board. The court held that such board had no independent power to hire counsel. The city attorney had charge of the legal affairs of the city, and this included the affairs of the board. He had the right to appoint assistants and was subject to removal by the mayor if he neglected his duty. The board of education had no such power and it was not a separate municipality or body corporate; it was a mere department of the city.

Plaintiff cites the case of Modoc County v. Spencer, 103 Cal. 498, 37 Pac. 483, as denying the general power to employ assistant counsel. Here the board of supervisors of the county sought to employ assistance for the county attorney in the prosecution of criminal cases and the latter official brought action in the name of the county to restrain payment. Evidently the employment was over his protest. The court held that the county attorney in prosecuting criminal cases acted for the city—not the county—and therefore it was a matter in which the county supervisors had no official interest; even though the county paid the costs of the term of court. The board of county supervisors in employing such counsel were not acting in a matter affecting the county or county matters. The board was attempting to act in state matters and of course beyond its jurisdiction.

Appellant cites the case of Merriam v. Barnum, 116 Cal. 619, 48 Pac. 727; but as the court pointed out in the decision this employment contested was not an employment which "contemplated the prosecution

of a suit" but was an employment of an independent county attorney whose "duty was completed when he advised the board."

"It was no part of appellant's duty to prosecute or defend" suits which might be brought by or against the county. In other words the county was attempting to select a county attorney and ignore the one elected by the people. He was not being hired to assist in the defense of suits but was being hired to advise the county at any time in the future when called upon for advice. Clearly such assumption of power on the part of the county board was in excess of any power which it would have by the statute.

A great number of the cases where the issue arises relative to the power of a city council to secure assistance for the city attorney are actions brought by the assistant counsel to recover the fees—a situation similar to the case of Bosard v. Grand Forks, supra. Almost invariably where an irregular contract was entered into and completed by the attorney he is permitted to recover; but the question of the power of a city council to enter into any kind of a contract is raised. The courts uniformly hold such councils, in the absence of prohibitive regulations, have the power to employ assistants for the city attorney in cases which in their judgment require such expenditure. The basis for such decision is that the city council is a body similar to the board of directors of a large corporation and is supposed to manage the affairs of the city with the same degree of prudence, care and foresight exhibited by the board of directors in the management of the affairs of the corporation; also that it would be a dereliction of duty on the part of the city council to permit the interests of the city to suffer for the want of adequate defense. Hence the power to employ assistant counsel in cases already commenced or to be commenced is uniformly admitted and upheld. In this State, this power is limited by the provisions of the City Budget Law (Laws 1925, chap. 169), particularly § 9 of the act, or § 3684a9 of the Supplement. However, if counsel irregularly appointed may recover his fees when the services are rendered there seems little ground for claiming the council has no power to enter into a regular contract.

It is a generally accepted rule, in the absence of statutory provisions to the contrary, a municipality has the implied power to employ additional counsel if in the opinion of the city council or other proper officials the interests of the city or other municipal corporation require

such assistance. Langdon v. Castleton, 30 Vt. 285; Horn v. St. Paul, 80 Minn. 369, 83 N. W. 388; Holdenville v. Lawson, 40 Okla. 38, 135 Pac. 104. In this latter case the Supreme Court is construing statutory provisions very similar to § 3612 of our Code which authorizes the mayor and the city council to appoint "such other officers as may be deemed necessary or expedient." The Oklahoma court holds that this is sufficient to authorize the appointment of assistant counsel. Kansas says, in Topeka v. Ritchie, 105 Kan. 398, 184 Pac. 728 that while the municipality "cannot needlessly employ special attorneys to do the ordinary professional work which the city attorney is by his office required to do, yet it often happens, and undoubtedly did happen in the present·instance, that a city may be so greatly harassed with suits that it would be a physical impossibility for the city attorney to attend to all the legal business of the municipality without the assistance of special counsel. In such cases the employment of special counsel is lawful and proper. The court holds that there was no want of power on the part of the city to employ special counsel in this protracted litigation." In this case the city brought action against a surety company to recover damages including "costs and expenses of certain federal litigation." Among the costs sought to be recovered were the fees paid to counsel employed to assist the city attorney. The surety company says such costs could not be recovered because the city council had no right or authority to employ assistant counsel. The matter was complicated by the fact that the employment had been made, services rendered and the fees paid. However, the court makes a broad general statement regarding the powers of city councils, and says:

"Although a city of the first class is provided with a city attorney whose duties are to attend to all of the litigation in which the city is involved yet the city may employ special counsel to assist the city attorney when the gravity or the extent of the litigation reasonably requires the services of such additional counsel."

The court is treating of the powers of the city council in general irrespective of the fact that the services have been rendered and the fees paid. It is clear that if the city had no right to employ counsel it could not recover from the surety company even if the fees were paid. We are satisfied the city council has the right under the law and under the rules of common sense, to protect the interests of the city, and

furnish assistance to a City Attorney whenever it is necessary to do so to protect the interests of the city, even though the city attorney be the most competent, diligent and active counsel available, as appears to be intimated by appellant.

The third proposition deals with the selection of counsel as made by the city council. There is nothing in the statute which requires the city attorney even to be a resident of the city or of the state. Where special counsel is employed by the city it necessarily implies exercise of judgment and discretion on the part of the city officials in the selection of this counsel. The fact there may be lawyers in the city other than the city attorney is not necessarily a good reason for selecting any one of them. They may be so connected with the suits brought against the city, or interested in the parties adverse to the city, or their ability and qualifications such that the city council does not deem it wise to entrust them with matters of such magnitude. The cases may require special knowledge and experience which often the ordinary practicing lawyer may not possess. There are numerous reasons why the city council may decide to go outside of the city to employ an assistant. The fact that it is customary to employ a local attorney is not binding for this "custom and usage" has not yet risen to the dignity of the common law. It is a matter for the council alone. The plaintiff shows no personal or special interest in the matter, he has no right to the selection, and his judgment is, to say the least, no better than that of the council.

The fourth contention deals with the claim that this contract was entered into without an appropriation first being made and is therefore in violation of the provisions of chapter 169 of the Session Laws of 1925, as set forth in §§ 3684a1 to 3684a13 of the Supplement to the Code. Section 3684a12 says, among other things:

"No new or unusual expense shall be incurred or permanent contract made . . . until an appropriation therefor has been made by the council of the municipality." Section 3684a9 says:

"No municipal expenditure shall be made or liability incurred, nor shall a bill be paid, for any purpose, in excess of the appropriation made therefor in final budget except as provided for in §§ 10 and 11 of this act."

Section 10 of the act is § 3684a10 of the Supplement and it provides that in cases where an appropriation for any particular purpose is

found later to be insufficient to meet the necessary expenditures for that purpose, the clerk or auditor of the municipality shall by the order of the Council, make a transfer of the required amount from any item of appropriation within the same group.  The City Budget law, chapter 169 of the Session Laws of 1925, divides the "estimated expenditure for the current fiscal year" into three groups—Group A, group B, and group C—and therefore under the provisions of this § 10 (3684a10), where an appropriation has previously been made for any object and this appropriation is insufficient the city council may instruct the auditor to take from some other appropriation in the same group or to transfer unexpended balances.  It is clear therefore that Section 10 does not apply to the situation before us.

Section 11, being § 3684a11 of the Supplement deals with "emergencies" and provides that in case of certain emergencies the city council, under certain conditions, may take funds already raised in order to meet the emergency; but such emergency is limited to cases of destruction or impairment of any municipal property necessary for the conduct of the affairs of the municipality," or "by epidemic or threatened epidemic" or "by the entering by a court of competent jurisdiction of judgment for damages against the municipality."  It is clear, therefore, that this contract for employment does not come within any of these classes of emergencies.  Because of the foregoing it is the contention of the plaintiff the city council is without power or authority to enter into this contract because it is conceded that when the preliminary budget was arranged and the budget adopted no appropriation was made for the employment of additional counsel.  The budget was adopted in the month of July as provided for by the Code, and these actions were not commenced until late the following August.

The record shows that while these actions for which the assistant counsel were employed were not commenced until August 27, 1927 yet the alleged causes for these actions had continued for some time.  The sewerage system of the city is so constructed that the sewage is emptied into the James River.  This has continued for a long time.  The riparian owners below the City had been complaining of this stream pollution; delegations had appeared before the council; attempts had been made to construct disposal plants but the citizens refused to build the plants proposed and the city council was in a quandary and

could well have in mind not only the possibility but the probability of suits against the city. The sewage was polluting the river; the plans for alternative disposal had been defeated; the city had to dispose of this sewage and ordinarily prudent men could well anticipate trouble.

The city budget law, adopted in 1925 was cumulative to other laws. True there is a section which says "all acts and parts of acts in conflict with this act are hereby repealed," but other statutory provisions, not in conflict with this act are still in force.

As we have indicated, the provisions of Section 3561 providing that a city "may sue and be sued" implies necessarily the power to make provision when sued and business men in charge of the affairs of the city well knew that suits may arise at any time, even when unjustified. When the first law for the incorporation of cities was adopted this was well-known and understood. Under the provisions of § 3677 of the Code, a city council was permitted to levy what was known as taxes "for contingent expenses not otherwise provided for." This provision has not been repealed by chapter 169 of the Session Laws of 1925. Section 5 of that act, being § 3684a5 of the Supplement, merely provides the form under which the appropriations are to be classified and expended. Such appropriations "for contingent expenses not otherwise provided for" may well be included in group A of subdivision 2 of that section.

To be included under "contingent" expenses does not mean that the situation should have arisen or even have been foreseen. The term expresses the quality of being casual, the possibility of coming to pass, an event which may occur. To be known and certain would not be "contingent." It includes "all anticipated future events which are not certain to occur—it includes possibilities which prudent men know may happen though there may not necessarily be known indications of it apparent." See Verdier v. Roach, 96 Cal. 467, 31 Pac. 556.

As stated in Bowns v. Stewart, 28 Misc. 475, 59 N. Y. Supp. 723 the term means "liable to occur." "Contingent" expenses are such as are unknown and uncertain and which may or may not be incurred hereafter. "A contingent expense must be deemed to be an expense depending upon some future uncertain event." People ex rel. Knox v. Yonkers, 39 Barb. 266. A good illustration and definition of the term

is given by the Court of Claims in Dunwoody v. United States, 22 Ct. Cl. 269, 280. That court said:

"The adjective 'contingent' . . . as used in appropriation bills to qualify the word 'expenses' has a technical and well-understood mean- ing. It is usual for Congress to enumerate the principal classes of ex- penditure which they authorize, such as clerk hire, fuel, light, . . . and then to make a small appropriation for the minor and unimportant disbursements incidental to any great business which cannot well be foreseen, and which it would be useless to specify more accurately. For such disbursements a round sum is appropriated under the head of 'contingent expenses.' "

This latter definition is peculiarly applicable to the situation at bar and it is from this appropriation of "contingent expenses" known in the city of Jamestown budget as "miscellaneous" that the appropriation is made to pay for the services contracted for. The fact that the actual expense does not appear to be known is not material because the contract calls for a maximum amount.

We are of the opinion that this appropriation for "contingent ex- pense" known as "miscellaneous" is such as is contemplated by law for the very emergency which arose and therefore that the council was well within its rights in entering into a contract and appropriating a certain sum from this appropriation to meet the expense. The judgment of the lower court is affirmed.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON, and BIRDZELL, JJ., concur.