[File No. 6558.]

JOSEPH F. GRABER, for the Use and Benefit of All Persons Interested in the Estate of Jacob Graber, Deceased, and as Administrator of the Estate of Jacob Graber, Deceased, Respondent, v. LEVI BONTRAGER, as Administrator of the Estate of J. J. Graber, Deceased, Appellant,

and

M. M. YODER, Defendant.

(285 N. W. 865.)

Opinion filed May 5, 1939.

*John A. Stormon,* for appellant.
*Kehoe & Kehoe,* for respondent.

MORRIS, J. This is an appeal by the defendant, Levi Bontrager, as administrator of the estate of J. J. Graber, deceased, from an order of the district court overruling the defendant's demurrer to the complaint. The demurrer attacks the sufficiency of the complaint upon the grounds that the court has no jurisdiction of the subject matter of the action and that the complaint does not state facts sufficient to constitute a cause of action.

The facts set forth in the complaint, which bear upon the points in controversy presented by this appeal, may be summarized as follows: In 1921 M. M. Yoder was appointed administrator of the estate of Jacob Graber, deceased, and thereafter qualified by filing his oath of office and bond in the form prescribed by § 8685, N. D. Compiled Laws, 1913. J. J. Graber, who was a surety on this bond, died about the year 1930. The administrator of his estate is the defendant and appellant in this action. Yoder continued to act as administrator of the Jacob Graber estate until May, 1937, when he resigned. Upon hearing on his final account the county court determined that he had funds in his hands belonging to the estate in the sum of $2,886.82 which the county court of Rolette county directed should be paid into court by order dated September 3, 1937. Joseph F. Graber, the plaintiff herein, is the successor to Yoder as administrator of the Jacob Graber estate. This action is brought to recover from the estate of J. J. Graber, the deceased surety on Yoder's bond, the sum found to be due by the county court. On September 11, 1937, Joseph F. Graber, as administrator of the Jacob Graber estate, filed a claim in county court for the above-mentioned sum against the estate of J. J. Graber, deceased, and on October 6, 1937, the administrator of the latter estate filed in county court his written disallowance and rejection of said claim. The filing of this claim, however, was either unnecessary or it was too late, and hence does not enter into this decision.

The complaint does not allege publication of notice to creditors, hearing on claims, or any action whatever with regard to the claim in ques-

tion by the county court. While the complaint does not indicate when the notice to creditors was published both parties in oral arguments and in the briefs state that at the time the claim was filed the statutory period for filing claims against the J. J. Graber estate had long since expired. We, therefore, have squarely presented to us the question whether the claim was such that it must have been filed in the county court within the period allowed for the filing of claims in order to be enforcible against the estate.

Section 8544a10, 1925 Supplement to Compiled Laws, provides, "All claims arising upon contract, whether the same be due, not due, or contingent, must be presented within the time limited in the notice and any claim not so presented is barred forever. . . ."

Section 8799, N. D. Compiled Laws 1913, provides, "No action for the recovery of money only shall be brought in any of the courts of this state against any executor, administrator or guardian upon any claim or demand which may be presented to the county court except as provided in this chapter."

Section 8544a14, 1925 Supplement to Compiled Laws, provides, "When a claim is disallowed by the county court, the holder must bring suit in the proper court against the executor or administrator within ninety days after the date of the notice by the county judge of its disallowance, if it be then due, otherwise the claim is barred forever."

Section 111 of the Constitution of the state of North Dakota confers upon county courts exclusive original jurisdiction in probate and testamentary matters, the appointment of administrators, and guardians, the settlement of accounts of executors, administrators and guardians, the sale of lands by executors, administrators and guardians, and such other probate jurisdiction as may be conferred by law.

If the claim is one which is required to be filed in the county court, the failure to so file it is jurisdictional and vital to the right of the plaintiff to maintain this action. Mann v. Redmon, 27 N. D. 346, 145 N. W. 1031.

Various reasons have been assigned by the courts for statutes such as ours requiring the presentation of claims, among them being that the administrator may be furnished with pertinent information regarding the justice and validity of claims against the estate in order that he may determine whether they should be paid, Flynn v. Driscoll, 38

Idaho 545, 223 P. 524, 34 A.L.R. 352, and to enable the administrator to adjust the claims wherever possible without the expense incident to litigation. Vance v. Hanson, 50 N. D. 446, 196 N. W. 750, 34 A.L.R. 348; Sunberg v. Sebelius, 38 N. D. 413, 165 N. W. 564.

In determining whether this claim is one which is required by the statutes to be presented it becomes necessary to consider the nature of the basis of the claim, that is, whether it arises upon contract. Upon this point the plaintiff argues that the basis of the claim is Yoder's failure to comply with the order of the county court to pay over to the estate the money which the court found was in his hands when he resigned and that the duty of the administrator to comply with the county court's order is a statutory and not a contractual obligation. It is further contended that the bond being collateral security for the performance of the duties imposed by statute, the basis of the claim against the estate and the gist of this action is the failure of Yoder to perform his statutory obligation to which the bond is only collateral security, thus the claim is not one arising upon a contract as contemplated by § 8544a10, supra, but a breach of the statutory obligation of the administrator resulting from his failure to comply with the county court's order.

Despite the forcefulness with which this point is presented we are unable to agree with the position of the plaintiff. It is true that Yoder failed to perform his statutory duty in not paying over the sum found to be due from him to the estate by the county court. The J. J. Graber estate became liable only, if at all, because J. J. Graber, in his lifetime, executed a written instrument wherein he bound himself together with another surety in this language, "unto the state of North Dakota, in the penal sum of Eleven thousand and no/100 Dollars, lawful money of the United States, to be paid to said state of North Dakota, for which payment well and truly to be made, we hereby jointly and severally bind ourselves, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents. . . . If said M. M. Yoder as such administrator shall execute all the duties of said trust as such administrator according to law, then this obligation to be void, otherwise to remain in full force and effect." This bond is a contract. The obligation of the sureties thereon is contractual. The claim of the plaintiff against the estate of J. J. Graber is based upon

this contract. It is true that its purpose is to assure the performance of statutory obligations by Yoder, the principal, but this fact does not render the obligation of the sureties statutory. They are liable because of their voluntary written agreement to make good the default of the principal. The administrator was charged with faithfully performing the duties of his office according to law. The sureties incurred a liability for failure of such performance on the part of the administrator because they expressly contracted with the state for the benefit of those interested in the administration of the trust that their principal would perform his duties. The instrument of contract which binds the sureties is the bond. Without it the sureties would not be responsible for any default. An action to recover from the sureties is based upon this instrument and is an action upon contract. A claim against the estate of a deceased surety for the principal's default exists because of the bond. It is a claim "arising upon contract."

In Fretwell v. McLemore, 52 Ala. 124, the court dealt with the effect of a nonclaim statute in a case involving the liability of the estate of a deceased surety where the devastavit had occurred prior to the death of the surety. In considering whether the claim was one based on contract, the court said, "There is nothing in the character of the liability which will deprive it of the character of a claim requiring presentation. A devastavit at common law was a tort, and on the death of the personal representative, all remedy at law was lost, on the maxim, 'Personalis actio moritur cum persona.' The only remedy was in equity, where the administration was treated as a trust. Taliferro v. Bassett, 3 Ala. 670; 2 Williams, Executors, 1565, 1712; 2 Redfield, Wills, 238. The defect in the common law was remedied by acts of parliament. 30 Car. II. chap. 7, and 4 & 5 Wm. & M. chap. 24, § 12; 2 Williams, Executors, 1712. Under these statutes, it became the settled law, that a party injured by a devastavit was a simple contract creditor, within the operation of the English statute of limitations of six years. 2 Williams, Executors, 1565. The general rule of the common law is, that breaches of trust are mere simple contract debts, unless they arise from the violation of a sealed instrument, and then they partake of the character of the instrument, and become debts due by specialty. 2 Redfield, Wills, 238. A devastavit here at law and in equity is treated not only as a breach of trust, but as a breach of contract,—a nonper-

formance of the condition of the bond given,—and like all other breaches of contract, actions for its redress survive against the personal representatives of principal or of surety. There can be no claim springing from a breach of contract, not within the statute of nonclaim."

Our statutes do not specify what constitutes a contingent claim and this court has not defined that term in any case dealing with the settlement of estates, however, in Scott v. Jamestown, 56 N. D. 454, 217 N. W. 668, the court dealt with the statute pertaining to "contingent expenses of a city," and said, "To be included under 'contingent' expenses does not mean that the situation should have arisen or even have been foreseen. The term expresses the quality of being casual, the possibility of coming to pass, an event which may occur. To be known and certain would not be 'contingent.' It includes 'all anticipated future events which are not certain to occur—it includes possibilities which prudent men know may happen though there may not necessarily be known indications of it apparent.' See Verdier v. Roach, 96 Cal. 467, 31 P. 556." The case of Verdier v. Roach, cited as authority in this quotation, involved the question of the necessity for filing a contingent claim based upon an executory contract. The California statute contained the same wording as our statute and is, no doubt, the source from which it is derived. In that case a lessor had covenanted to indemnify a lessee against certain damages during the term of the lease. The lessor died and after his death the damages occurred. It was held that the agreement to indemnify constituted a contingent claim and that even though the actual damages did not occur until after the death of the lessor, the claim should have been presented to the administrator within the time fixed by the notice to creditors and not having been so presented, an action could not be maintained thereon against the administrator.

Verdier v. Roach has been criticized by the Supreme Court of Montana in Nathan v. Freeman, 70 Mont. 259, 225 P. 1015, 41 A.L.R. 138, cited by the respondent. In Halloran-Judge Trust Co. v. Heath, 70 Utah, 124, 258 P. 342, 64 A.L.R. 368, the Supreme Court of Utah, while noting the Montana decision, follows California and says, "While we are of opinion provision should be made for such cases by appropriate legislation we are unwilling, in view of the limitations upon our power, to take that duty upon ourselves. We cannot avoid the con-

clusion that the statute is susceptible of no other interpretation than that contingent claims must be presented to the executor or administrator within the time required by law, and that plaintiff herein is barred by failure to present its claim in time."

The supreme court of Nebraska, in the case of Re Ayres, 123 Neb. 453, 243 N. W. 274, said, "A contingent claim against a decedent's estate is one upon which the liability depends upon some future event, which may or may not happen, and which makes it uncertain whether it will ever be a liability. Stichter v. Cox, 52 Neb. 532, 72 N. W. 848; Hazlett v. Blakely, 70 Neb. 613, 97 N. W. 808; Davis v. Davis, 137 Wis. 640, 119 N. W. 334; 11 R. C. L. 205, § 229." This definition fits squarely the liability of the sureties upon an administrator's bond. The sureties have agreed to become liable only in event the principal fails to perform his duty. The bond constitutes the contract which is a basis of liability, but according to its terms the actual liability is contingent upon a future event which may or may not happen, that is, the default of a principal.

The respondent also cites Martz v. McMahon, 114 Minn 34, 129 NW 1049, wherein the conclusion was reached that where a minor had no guardian to file a claim against the estate of the deceased surety of a defaulting administrator, the infant's claim against such estate was not barred by the statute of non-claim, there being no one in existence with legal authority to file such claim within the statutory period. This holding, however, does not seem to be the general rule. See Davis v. Shepard, 135 Wash. 124, 237 P. 21, 41 A.L.R. 163; Morgan v. Hamlet, 113 U. S. 449, 28 L. ed. 1043, 5 S. Ct. 583. In this case, however, we need not choose between these authorities, for in the case at bar it was the duty of Yoder to file the claim against the estate of his deceased surety. It is argued by the respondent that if Yoder had already defaulted at the time of the surety's death, "he was legally dead" in so far as his office as administrator was concerned, and that there was, therefore, no one in existence to file the claim. This position is untenable. If Yoder, by his own acts, was already disqualified as administrator at the time of the surety's death, the devastavit under the bond had already occurred and the bond was no longer a contingent liability. The liability had become absolute and the claim for that reason was required to be filed. In either event, the respondent's argument fails.

If the devastavit had occurred at the time of the surety's death, the bond had become a claim that was due. If it had not occurred the bond constituted a contingent claim which Yoder, as administrator of the Jacob Graber estate, was required to file against the estate of the surety.

In Baird v. McMillan, 53 N. D. 257, 205 N. W. 682, 41 A.L.R. 177, it was held that where a bank did not suspend until after the period had lapsed for filing claims against the estate of a deceased stockholder, the claim for superadded liability was not barred by the nonclaim statute. In arriving at this conclusion this court pointed out that the stockholder's liability was not an asset of the bank as a going concern and could not have been enforced by the officers of the bank and that a holding that the nonclaim statute was effective against the stockholder's liability would be equivalent to holding that a claim is barred though there is no legal person in existence capable of presenting it, and said, "The statute does not seem to contemplate a situation where, owing to the nature of the liability, there is no person in existence capable of presenting the claim." Thus the same distinction applies to Baird v. McMillan, supra, as applies in the Minnesota case of Martz v. McMahon, 114 Minn. 34, 129 N. W. 1049, supra.

The facts involved in Baird v. McMillan, supra, further distinguish that case from the one at bar. The bank stock upon which the superadded liability subsequently arose was an asset of the estate which prompted the court to say, "Without expressing any opinion as to the duty of creditors or a receiver, where a bank might suspend before the expiration of the regular period for filing claims, it would seem that every purpose of the statute is served, with respect to claims of the character involved here, when the court and the executor or administrator are apprised through the inventory or otherwise that the deceased was a stockholder in a bank and as such subject, contingently, to assessment or liability under the statute. Ratio legis est anima legis."

The stock was property of the decedent which became an asset of the estate upon his death. The failure of the bank turned this asset into a liability after the time for filing claims had lapsed. The liability thus created is of a manifestly different character than that of a surety on an administrator's bond. The surety's liability did not arise from the ownership of any property by the deceased or his estate or from any act subsequent to the execution of the bond over which the surety

or his representatives exercised control. In short, the liability involved in Baird v. McMillan arose from an asset of the estate, while in the case at bar, the claim sought to be asserted arose from a contract which constituted a contingent liability from its inception.

In Johnson v. Larson, 56 N. D. 207, 216 N. W. 895, this court had before it a situation wherein a comaker of a promissory note who was compelled to pay more than his share brought suit against the administrator of a deceased maker for contribution without having presented a claim to the deceased maker's estate within the time prescribed therefor. The court held "the claim existed as a contingent one from the time the note was executed and it could have been filed as such within the statutory period," and that since no claim had been filed, the action could not be maintained. In the case before us the bond existed during the entire period for filing claims against the J. J. Graber estate, and could have been filed as a contingent claim during that period.

A number of cases cited by the respondent deal with the accrual of causes of action under statutes of limitation. The statute with which we are dealing here is not a statute of limitation, but a statute of nonclaim. Johnson v. Larson, supra; Mann v. Redmon, 27 N. D. 346, 145 N. W. 1031, supra; Baird v. McMillan, supra. Section 8802, N. D. Compiled Laws 1913, specifically authorizes the maintenance of an action by an executor or administrator "on the bond" of his predecessor. Although, as some authorities state, a bond such as we are here considering is a collateral contract guaranteeing the performance of certain duties by the principal, it is a contract nevertheless. The liability of a surety thereon is a contractual liability, and in event of a surety's death, the bond constitutes a contingent claim against the surety's estate, which must be filed in accordance with §§ 8544a10 and 1544a11, Supplement to N. D. Compiled Laws 1913. The complaint fails to state a cause of action.

Reversed.

Nuessle, Ch. J., and Burke, Burr, and Christianson, JJ., concur.